STATE of Missouri, Respondent,

v.

Leland L. AYERS, Appellant.

No. 48850.

Supreme Court of Missouri,
Division No. 1.

March 12, 1962.

A gasoline filling station, known as the Midway Service Station, located near Smithville in Clay County, Missouri, and leased to and operated by Cecil Forsythe, was broken into and entered on the night of July 8, 1960. The cash register was opened and one dollar and four cents in change taken and carried away. The station contained "oil, additives, Frams, and the general run of service station (merchandise)." No merchandise was missing after the burglary. An entry had been effected by breaking the plate glass out of the front door. Most of the broken glass had fallen inside the station.

J. B. Beavers, Cameron, for appellant.

Thomas F. Eagleton, Atty. Gen., Ben Ely, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

DALTON, Presiding Judge.

Defendant was charged with burglary second degree and stealing in conjunction with burglary. He was convicted of both and his punishment fixed at four years' imprisonment for the burglary and three years for stealing in conjunction with the burglary. The court ordered the terms of imprisonment to run consecutively, a total of seven years. See Sec. 560.070, 560.095, 560.110 RSMo 1959, V.A.M.S.

Defendant has appealed from the mentioned judgment and here contends that "the Court erred in allowing plaintiff's attorney to cross-examine the witness Culbertson as a surprise witness concerning the statement given by him at the time of his arrest, as such cross-examination re-emphasizes such Culbertson's testimony and further allowed plaintiff's attorney to have the effect of getting inadmissible documentary evidence before the jury."

While defendant was charged, tried and convicted as a principal in the first degree, it is apparent from the record that he was being prosecuted as an accomplice on the theory that he was an accessory before the fact. See Sec. 556.170 RSMo 1959, V.A. M.S.

Defendant was arrested in Imperial, California, and returned to Clay County for trial. In order to make a case for the jury, the State called as a witness against the defendant one Marion Wayne Culbertson, an admitted participant in the alleged crime.

Culbertson testified that he was twenty-one years of age and an inmate at the Algoa Intermediate Reformatory at Jefferson City; that he had been brought to Clay County to testify in the case; that he had previously pleaded guilty to burglarizing the Midway Service Station operated by Mr. Forsythe; that the offense was committed on or about the 8th of July, 1960; and that others were with him at the time this burglary took place. He said: "They was with me, but they did not go in. * * * I went in the service station and the defendant and another boy was, stayed in the car." The car belonged to defendant. Culbertson said he had "occasionally" talked to defendant about breaking into this filling station. It was on the night before he broke in the station. No one else was with him at the time he talked to defendant. He did not remember the substance of the conversation, nor who had suggested breaking into the station. He said, "I don't remember exactly."

On the night of the burglary he was with defendant and one Guy William Brown. They had left Lathrop, Missouri, and were going to Pleasanton, Kansas. They took

Route No. 169 and came by the Midway Service Station about one o'clock a. m. The station was closed. They did not stop there at first, but went down the road about two miles and parked for a little while. Defendant was driving. They then went back to the station and witness "jumped out and broke in." Defendant did not stop the car, but he slowed down to about five miles per hour for witness to get out. The car did not stay at the filling station, but, after Culbertson entered the station and came out, the car was coming back down the road. It slowed down and witness got in. Defendant was still driving. Witness obtained a dollar and some change in the filling station. The money was later used to buy gasoline for defendant's automobile.

Witness said he had "not talked anything about the burglary before it happened, *, * * not that night, sir," but he had talked about it "a little bit before." He also said that he and defendant had talked about the filling station, but, "Well, not exactly break into it, sir. * * * Well, we just mentioned the filling station. We didn't know what the name of it was or anything."

As to whether witness had talked to defendant about breaking into this particular station, he further answered: "I won't say that in that certain filling station or—he said filling station, sir, and we was going to make a payment on the car, yes."

Previous to the break-in, and apparently before the 8th of July, 1960, witness and defendant had been to Pleasanton, Kansas, and as they came back by this filling station, witness said: "Well, we pulled in there to it and just looked at it, Leland Ayers and I." The station was not then open. They did not then do anything. As to whether he discussed "the filling station at any time," he further said: "Not the exact filling station that I remember, sir."

Concerning the actual burglary, witness also said that after they had passed the station, stopped down the road and then returned, and before he got out of the car, they were looking it over. "They was looking over there at it, the station." The filling station was not then open. As to how witness broke into the station, he said: "I used a tire tool * * * out of the back end of Leland's (defendant's) car. * * * It was laying in the back seat. * * * I was in the back seat."

As to whose idea it was to break in he again said: "I don't remember exactly, sir." He then testified that he had made a statement to the officers on or about September 21, 1960. A document was marked for identification as State's Exhibit No. 1 and handed to the witness. He was asked to look at the document and see whether or not it refreshed his memory. An objection was made and sustained on the ground that the State was bound by the witness' testimony. Counsel for the State again asked whose idea it was to break into this station and defendant's counsel objected on the ground that the same question had been asked three or four times before and the witness had said he didn't recall. The objection was overruled and the witness again said, "I don't remember, sir."

In the course of the direct examination up to this point the witness did not appear to have a very good memory and on various occasions he had said, "I don't remember exactly." The record would support a finding that he was reluctant and evasive. As indicated, he had repeatedly said that he did not remember who suggested that this particular filling station be broken into on this particular night.

Thereafter, out of the presence and hearing of the jury, counsel for the State requested the Court's permission to cross-examine the witness for the reason that his testimony was a surprise to the State. Counsel stated that the witness had made a statement on September 21, 1960, in regard to the matter which was different from the witness' present testimony; that "* * * this morning Mr. Culbertson told me when I asked him about this case that it was Mr. Lee Ayers' idea * * * I'd

like to introduce for the purpose of this motion only, state's Exhibit No. 1." Counsel further stated that the witness was a material witness for the State; that the State "had to call him because he was on the scene"; that the State had no choice in the matter; that in several particulars he had testified either reluctantly or says that he cannot recollect; "that he has surprised us with his testimony because it's different from all previous statements and more particularly the signed statement, which is state's Exhibit No. 1 * * *; that it's in the court's discretion to allow us to cross examine where * * * a material witness which we're obliged to call, * * * testifies differently and surprises the state * * *." Counsel reviewed other matters, which he said the witness had told him, and again asked the court's permission to cross-examine the witness and to refresh his recollection by use of the previous statement.

Defendant's counsel, after examining the exhibit, insisted that there was no material difference between the witness' testimony and his prior statement; that he had not been a reluctant witness; that he had answered all questions; that cross-examination would tend to "re-emphasize his testimony" and would be unfair to defendant. The court ruled that the State's exhibit could not be put in evidence, but that the State's attorney might "cross-examine the witness in regard to such matters as may be in conflict with his testimony," that is, as to such matters as may be in the State's Exhibit No. 1, which the defendant now states he does not remember. The mentioned exhibit was before the trial court when the court ruled, but it does not appear in the transcript and it has not been filed as an exhibit in this Court.

On this appeal appellant insists that a reading of Culbertson's testimony shows he was not a hostile witness; that he had not made inconsistent statements; that "he was not shown to have caused entrapment"; that he had "merely failed to relate facts which the party offering him had been led to believe he would relate"; and, therefore, the "prosecution *should not have been allowed to cross-examine the said witness as to a statement given by him prior to the time of the trial.*" (Italics ours.) Appellant concedes that the State was required to call the witness in order to make out a submissible case.

Absent any evidence as to what the prior statement contained we think the record fails to show any abuse of discretion or prejudicial error in granting the mentioned permission to cross-examine the witness to the extent permitted. In addition, we have reached the conclusion that such cross-examination as was permitted did not prejudicially re-emphasize Culbertson's testimony or have "the effect of getting inadmissible documentary evidence before the jury" so as to deprive defendant of a fair trial.

After the court's mentioned ruling was made, the cross-examination proceeded as to specific questions alleged to have been asked by Sgt. Howard Morris and answers by the witness. In some instances the prior questions and answers were remembered and in some instances they were not, but even where remembered the witness could not now say that the specific answers previously given were true. Apparently such efforts as were made to refresh the witness' recollection proved unsuccessful. During this cross-examination on only two occasions were objections made by defendant's counsel. They were sustained and all the relief asked was granted. Counsel did object to one question on the ground that it "has the effect of putting the statement in evidence." This objection was sustained and the question limited to a specific matter.

Thereafter, defendant's counsel cross-examined the witness as follows: "Q. Mr. Culbertson, on the night you broke in, * * * at no time during that night did Mr. Ayers suggest that you break into that particular filling station, is that right? A. That's right, sir. Q. And you did it on

your own? A. Yes, sir, I did. Q. And without any encouragement from him? A. No, sir, no encouragement. Q. And any conversation you might have had with him relative to how much money there was in the filling station, when did that take place? A. I believe it was about a week before, I don't remember exactly, sir. Q. And did he at that time suggest you break in the filling station? A. Not that specially filling station, no, sir. Q. He just simply mentioned that filling station that had eighty dollars in it at the time? A. Yes, sir. Q. And how long after you came out of the station until you were picked up by Mr. Ayers and by Mr. Brown? A. About five or ten minutes, sir. * * * Q. And did they give you any reason for letting you out? A. No, sir, they didn't. Q. Did you ask to get out? A. No, sir."

On re-direct examination the witness said that before he broke in the station they were "all out of money"; that when he came out of the station he went over to the other side of the road opposite the station and "waited for them to come by" (Ayers and Brown); that he saw the car coming "a little bit after I was, went to the west side of the road"; that he "figured they'd be by there," because he had gotten out of the car; that, after he was in the car and had left the station, nothing was said, but he had the dollar wrapped up in a handkerchief and "I just laid it up in the front seat, dropped it up in the front seat"; and that later he reached up there and got it and paid for the gasoline that was later put in the car. No objections were made or ruled during this re-direct examination. Thereafter, the witness was further cross-examined by the prosecuting attorney about two questions and answers, or statements made to Sgt. Howard Morris (apparently counsel read from the State's Exhibit No. 1, although that does not appear from the transcript). These questions were as to whose idea instigated this particular "break-in" and what defendant Ayers had said about getting the money for payments on his car. The only objection made to the

questions were that they had been asked before. The objection was sustained as to the first question and overruled as to the second which was as to whether the witness had quoted defendant as saying "something about he wanted to make a payment on his car and we would break in there to get it." The witness then answered: "Not in that filling station exactly, sir. He said that break in and get it, but didn't say exactly the filling station and I didn't think nothing about it either, at the time."

At the close of the State's evidence the defendant moved for a judgment of acquittal on the sole ground "that the conflicting statements of Marion Culbertson, the only witness for the state on the one issue essential to the state's case, are of such a nature as to utterly destroy the truth of his statement on such issue." The motion was overruled and defendant offered no evidence.

Appellant argues that "a reading of the witness Culbertson's testimony does not show any inconsistent statements or anything to show that he was a hostile witness; and therefore (the) prosecution should not have been allowed to cross-examine the said witness as to a statement given by him prior to the time of the trial."

It will be noticed that there is no contention that the cross-examination of the witness, as permitted by the court, did in fact prejudicially re-emphasize Culbertson's testimony, or that any prejudice in fact resulted to appellant by reason of such cross-examination, or that the cross-examination permitted was not properly conducted. Appellant's position is that it was prejudicial error to permit the cross-examination at all. The assignment of error is in effect limited to the court's order under which the cross-examination was conducted. No attempt has been made to show wherein or how any specific cross-examination re-emphasized any particular part of Culbertson's testimony, nor has appellant attempted to demonstrate by particular references that "the effect" was to get "inadmissible docu-

mentary evidence before the jury" to the prejudice of defendant.

Appellant relies on the case of State v. Castino, Mo.Sup., 264 S.W.2d 372, 375, where the Court said: " * * * it is the general rule that a party by calling a witness vouches for his credibility and will not be permitted to cross-examine or impeach him, except in case of entrapment, or where he is hostile. The latter exception is especially applicable where the party is obliged to call the witness. These are considered to be matters within the reasonable discretion of the trial court. It has also been said that it is not sufficient to warrant a party, who puts a witness on the stand, in impeaching such witness (by showing contradictory extrajudicial statements) that the 'witness merely fails or refuses to tell the facts which he had theretofore related extrajudicially or fails to tell all of such facts, but, in order to warrant impeachment in the mode stated, the witness must go further, and by relating wholly contradictory facts become in effect a witness for the adverse side. In the latter event the party calling the witness is entitled to show that he was misled and entrapped by the witness' former words and attitude into calling the adverse witness. He is not so entitled, however, when the witness merely fails to relate facts which the party offering him had been led to believe he would relate.' "

Culbertson was not impeached by the introduction of any contrary statements. Exhibit No. 1 was not offered or received in evidence before the jury. It was discussed before the court outside the hearing of the jury. It is true the witness on cross-examination did remember that he had been asked a few specific questions and had made certain answers but he said he could not remember whether the answers to those specific questions were true. However, it appears from a review of all of the testimony that the cross-examination of the witness by the counsel for the State made little or no contribution to the State's case, nor did the cross-examination of the witness by defendant's counsel materially aid the defendant. Defendant's motion for a judgment of acquittal at the close of the State's case recognized, and was based upon, conflicts in Culbertson's testimony.

The record shows no abuse of the court's discretion in permitting the cross-examination of the witness to the extent shown by this record. State v. Taylor, Mo.Sup., 324 S.W.2d 643, 648(8); State v. Rack, Mo. Sup., 318 S.W.2d 211, 217(10, 11). The assignment of error is overruled.

We have also examined those matters required to be considered under Supreme Court Rule 28.02, V.A.M.R., and find no error.

The judgment is affirmed.

All concur.