**STATE of Missouri, Respondent,**

v.

**Charles A. JONES, Appellant.**

No. 55023.

Supreme Court of Missouri, Division No. 2.

Feb. 8, 1971.

J. Arnot Hill, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Thomas H. Stahl, Asst. Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

Appellant, having been charged for the crime of first degree murder, was convicted by the jury for the crime of second degree murder of one Linda Bronson. The jury assessed appellant's punishment at ten years imprisonment in the Department of Corrections.

The sufficiency of the evidence to sustain the judgment is not questioned. Appellant's first point is that prejudicial error was committed by the trial court in admonishing appellant during his cross-examination to answer the questions. He says the court was actually commenting to the jury that appellant had not answered the question, but was being evasive. He says also that the court's remarks to appellant indicated its displeasure with his conduct. The matter arose thus:

"Q. She didn't reach for any guns, did she?

A. I was right behind her, she didn't—

THE COURT: Answer the question. Did she reach for any gun?

THE WITNESS: No, sir.

\* \* \* \* \* \*

Q. You didn't drop her or throw her on her back in the living room?

A. I picked her up off of the floor in the living room after I laid the baby on the divan—

THE COURT: He is asking you a question, whether you either dropped her or threw her on the floor. That is as simple as it can be.

THE WITNESS: Not to my knowledge.

(By Mr. Freeman) Not to your knowledge?

\* \* \* \* \* \*

Q. Now, she had not made any complaints to you of any physical ailments in the week prior to this occurrence, had she?

A. She called me—

THE COURT: Well, answer it yes or no, and then explain it.

THE WITNESS: Yes.

\* \* \* \* \* \*

Q. But do you know how she got from the place of employment to the baby sitter's?

A. If I didn't have anything to do, she did not go to the baby sitter's; she went directly to work.

MR. FREEMAN: Your Honor, can the witness be instructed to answer—

THE COURT: Yes, I think so. You quit avoiding these questions. You answer these questions yes or no and then give an explanation, but don't answer another question that hasn't been asked you.

Now go ahead. Ask this question again, Mr. Prosecutor.

MR. FREEMAN: Mr. Garrett, would you be kind enough to read it back to us.

(Whereupon, the last question was read by the reporter, as follows:

'Q. But do you know how she got from the place of employment to the baby sitter's?'

THE COURT: Yes or no, and then you can explain.

THE WITNESS: I can't answer it with a yes or no.

THE COURT: You can answer yes or no and then explain. Do you or don't you know?

THE WITNESS: All the time—no, I don't know.

THE COURT: Now don't—You say yes or no. Do you know how she was getting back and forth from the baby sitter's to work? If you don't know, say so.

THE WITNESS: No.

THE COURT: All right. That is very simple."

■ The state points out that no objections were made by appellant to the alleged prejudicial remarks of the court, but the matter was merely presented in the motion for new trial and hence was not preserved for review. In State v. McCullough, Mo., 411 S.W.2d 79, 81 [1–3], it is said: "If a party believes that [the court's] remarks may prejudice his cause, he should object immediately and afford the court an opportunity to correct any erroneous impression, and the issue is not timely presented when raised for the first time in a motion for new trial." To the same effect is State v. Hudson, 358 Mo. 424, 215 S.W.2d 441, 442 [1–3], except where the court's remarks "were so prejudicial that their effect is considered ineradicable." In the light of the last quotation the matter will be examined to ascertain if the court's remarks and admonitions to appellant as a witness prejudicially deprived him of a fair trial. Considered in context, it is apparent that appellant was an unresponsive witness—he did not directly answer the questions put to him by the prosecution. In such case the trial court had the authority to direct the witness to answer the questions for the purpose of bringing out the facts. State v. Grant, Mo., 394 S.W.2d 285, 287; State v. Tally, Mo., 22 S.W.2d 787, 789 [7]. Nothing complained of indicates any hostility of the court toward appellant, or that it assumed the role of advocate for the state. No aggravated circumstances are present as was the case in State v. James, Mo., 321 S.W.2d 698, cited by appellant. Point I is overruled.

■ Complaint is made that the court erred in permitting the prosecutor to read

portions of the testimony of Dr. Charles Whittaker, which had been typed, to the jury during argument. The testimony related to what might have been done surgically to save the victim, Linda Bronson. The gist of the doctor's answers was that nothing done surgically would have saved her—she would have died anyway. Appellant's specific objection to the reading of the testimony was "that he is bolstering the testimony by making it appear that this is the court reporter's version of it, that this is an accurate part of it, and it is the same thing as supplying this jury with a copy of the witness's testimony." In Small v. Wegner, Mo., 267 S.W.2d 26, 29, the trial court denied a request *after submission* made by the jury to review certain testimony. Neither party objected to the jury's request, and appellant contended its request should have been granted. The court affirmed the trial court's ruling citing and relying on Padgitt v. Moll, 159 Mo. 143, 60 S.W. 121, 124. The distinction here is that the reading of the transcribed case occurred before the final submission of the case to the jury. Other cases have held that it is not improper during the trial and argument for counsel to refer to his own notes or those of the stenographer. Bradley v. City of Spickardsville, 90 Mo.App. 416, 424 (distinguishing the Padgitt case, supra); Robison v. Floesch Const. Co., Mo.App., 242 S.W. 421, 424 [8]; Peel v. Gulf Transport Company, 252 Miss. 797, 174 So.2d 377, 391. It is not contended that the doctor's testimony was erroneously transcribed or misread by counsel. No prejudice appears and Point II is overruled.

■ The last point is that the court erred in restricting the argument of appellant's counsel when he stated there was an element of self-defense in the case. The prosecutor objected and the court sustained the objection. Appellant says the evidence did establish self-defense but he elected to have his defense submitted on a theory of accident. He says the argument was legitimate as based on the evidence and on the court's Instruction No. 5 which de-

fined justifiable homicide. The court did instruct the jury to disregard any defense of self-defense.

Appellant says an issue of self-defense was in the case from these facts to which he testified: At the time of the occurrence for which he was charged, appellant was married but separated from his wife pending a divorce. The deceased, Linda Bronson, had lived with him up to a week or two prior to the homicide. On that date Linda came to his home unexpectedly and when appellant was asleep. He first noticed her as she was shaking her baby at Nita Rose, who was present, saying, "You try to get one of these from him; I've got the last one he'll ever have." The deceased, Linda, knew where appellant kept his shotguns. She had tried to shoot him on a previous occasion with one of his own guns. Linda ran toward the den, where appellant kept his guns, before she went to the bathroom (where the state's evidence showed appellant hit Linda with karate chops). Appellant did not know what Linda was going to do when she ran toward the den.

As above set forth, on cross-examination appellant testified that Linda did not reach for any guns, and passed by the den where the guns were and went into the bathroom where she was beaten.

The argument is that because of the foregoing facts—that deceased had threatened appellant by stating he was not going to have any more babies; that she had attacked him with one of his shotguns on a previous occasion; and that she ran back toward that portion of the house where he kept his shotguns—appellant "should have been entitled to an instruction on self-defense as well as an instruction upon accident."

In Instruction No. 5, submitting manslaughter for a finding, the court defined that term as "the killing of a human being by the act, procurement or culpable negligence of another not herein declared to be murder or excusable or justifiable homicide." The jury was authorized to convict

appellant of manslaughter if it found he "killed the said Linda Bronson, without malice and without premeditation as these terms are hereinbefore explained and under such circumstances that it is not excusable or justifiable homicide, * * *. 'Justifiable homicide' is the killing of another in the lawful defense of one's person. 'Excusable homicide' is the killing of another accidentally."

There was no evidence that at the time appellant was beating Linda in the bathroom he had a well-founded apprehension of great bodily harm. The court was therefore not required to give an instruction specifically on self-defense. State v. Tolias, Mo., 326 S.W.2d 329, 334 [8–10]. Apparently the words defining justifiable homicide were erroneously included in Instruction No. 5 which would be harmless as to appellant, and as the record shows appellant was permitted to argue as to the words. It was as to his mention of there being an element of self-defense in the case that the objection was sustained. Appellant's submitted defense of accident is under the cases inconsistent with the defense of self-defense because of the element of intention present in the latter. State v. Hale, Mo., 371 S.W.2d 249, 258; State v. Malone, Mo., 301 S.W.2d 750, 759. In this posture no error appears in sustaining the state's objection to appellant's "element of self-defense" argument. Point III is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.