**STATE of Missouri, Respondent,**

v.

**Randolph VANCE, Appellant.**

**No. 36852.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Aug. 31, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

---

Robert A. Hampe, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Robert M. Sommers, Asst. Attys. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Special Judge.

Randolph Vance, charged by indictment under the Second Offender Act, § 556.280 RSMo 1969, was found guilty by a jury of robbery in the first degree by means of a dangerous and deadly weapon and was sentenced by the court to imprisonment for a term of twenty-five years. We affirm.

Appellant does not challenge the sufficiency of the evidence. A jury reasonably could find that about 10:30 o'clock in the evening of May 9, 1974, in the 3500 block of Grand Avenue in the City of St. Louis, appellant robbed Richard Pruitt of $126 by use of a pistol.

Appellant first asserts that "the trial court erred in refusing to admit into evidence, on grounds of relevancy, medical records of the Atman Medical Health Clinic which showed that Richard Pruitt had twice been treated by that clinic's ophthalmology department and that on at least one occasion, the condition treated was 'blurred vision.' "

Richard Pruitt, the victim of the robbery, testified on direct examination that he observed appellant during the robbery, that he identified him in a lineup shortly thereafter, and that he wore glasses to "read with," but that it was "only small reading" that he could not read. On cross-examination he testified that about eleven o'clock of the morning of May 9, 1974, he had been to a place, "up on Grand and St. Louis Avenues," the name of which he could not remember, and a doctor had given him "a shot because [he] wasn't feeling good."

After appellant testified in his own defense, he offered in evidence certain medi-

cal records of the Atman Medical Health Center located at St. Louis and Grand Avenues. The records were not marked for identification, and neither the records nor copies of them are before us. In comments to the court in chambers in the form of an offer of proof, appellant stated that the records "would show that Richard Pruitt was not treated at the Atman Medical Health Center on May 9, 1974 as he previously testified." The State objected to this offer, which was sustained by the court on the grounds that (a) "the offered evidence is [of] a collateral fact which would not tend to prove or disprove any real issue involved in this case," and (b) the evidence "is not available to the defendant without a waiver" by Richard Pruitt. As a "further offer of proof," appellant restated (a) above, and then asserted that the records would show that "on two occasions, January 21, 1974 and February 20th, 1974, Richard Pruitt was treated by the Ophthalmology Department of the Atman Medical Care Center and on one of these occasions * * [January 21, 1974] the reason for the request [for treatment] * * * was blurring of vision and the condition was an error of refraction." Apparently the court examined the records en camera because it commented: "Let the record further show the Court is further excluding that record because it does not indicate whether that is a permanent condition or temporary or the circumstances of the examination and it would be of no probative value in this case." Subsequently during the discussion appellant stated that the "medical privilege" was personal to Mr. Pruitt and that the State was not entitled to raise it for him. The court commented: "I'll raise it for Mr. Pruitt," and then stated that "Even if Mr. Pruitt were here, the Court is holding that the proffered evidence is not relevant to the issue involved in this case. It is not relevant to any impeachment of the witness on anything except a collateral matter; that it makes no difference whether he went to the Atman Clinic in the afternoon [Mr. Pruitt said it was about 11:00 o'clock in the morning] of a day in which he was robbed at 11:00 o'clock at night."

Appellant now admits in his brief that he "does not challenge the ruling of the Trial Court that any evidence in contradiction of Mr. Pruitt's testimony concerning his activities during those morning hours would be collateral to the issues of the case and thus inadmissible." His point is directed solely to the contention that the court erred in refusing to admit the medical records into evidence "on the issue of relevancy." He makes no reference in his point to the fact that the court also ruled that the medical records were subject to the physician-patient privilege. We note that appellant did not present the records to the court until after Mr. Pruitt had been excused as a witness and was no longer present.

Appellant argues that Richard Pruitt was the "sole identifying" witness, that the offered medical records would show that he had "twice been treated by the clinic for eye conditions," and the fact that he had had "medical problems relating to his ability to see is relevant to the issue of credibility of [Mr. Pruitt's] identification of [appellant] as the assailant."

The State contends that the introduction of the medical records to show that Mr. Pruitt received treatment in January and February 1974 for "eye conditions" would have been impeachment on a collateral issue. We do not agree. Mr. Pruitt did not deny that he received the treatment, but he did testify, in effect, that his eyesight was good. The impeachment, if any, was of this testimony, and that would not have been a collateral issue because his ability to identify appellant by sight was one of the principal issues. But, prior to the offer of the medical records he was not asked the necessary warning question of whether he had received treatment at the Atman Medical Health Center. Therefore, the records could have been admissible only on the basis that they constituted substantive proof of an impairment of eyesight.

As previously noted, the medical records are not before us, and we do not know what they contain other than as indicated by the statements by appellant's

counsel and the court as above set forth. From these statements there is no indication that the treatments, one of which was over three months and the other over two months prior to the robbery, pertained to a permanent condition of impaired ability to see. In fact, it appears that the "blurring" resulted from an "error of refraction," which would indicate something was wrong with his glasses, and for all we know from the record, the other treatment may have been to remove a foreign object from his eye. Assuming the records were otherwise admissible, there was no showing that they tended to establish a condition which would have impaired Mr. Pruitt's ability to identify appellant at the time of the robbery.

■ The burden was on appellant to establish that the medical records were admissible in evidence, and he also has the burden in this court to establish error on the part of the trial court. Aside from the issue of the physician-patient privilege, the record before us does not permit a finding that appellant did either.

Appellant's remaining point asserts prejudicial error in oral argument.

The transcript contains the opening argument by the State to the jury. It then shows the following: "At the conclusion of the opening argument on behalf of the State, Mr. Crouppen [appellant's counsel] made his closing argument to the jury on behalf of the defendant. Mr. Crouppen's argument has been deleted from this transcript of the record at his request." There then follows the closing argument on behalf of the State, and the opening statement is as follows: "Mr. White: [Assistant Circuit Attorney] I'll tell you one thing, ladies and gentlemen. I'd rather have Richard Pruitt walk down a dark alley with me than Randolph Vance." Appellant's general objection ("Object to that, Your Honor") was overruled.

■ This statement, standing alone and taken out of context, might be considered to have exceeded permissible limits. But, it is reasonably apparent that it was made in response to something that was said in argument by appellant. In that event, even if the statement was otherwise improper it was invited error about which appellant is not entitled to complain. *State v. Granberry*, 484 S.W.2d 295 (Mo. banc 1972). The trial court has considerable discretion in its rulings pertaining to retaliatory arguments. *State v. Smith*, 431 S.W.2d 74 (Mo.1968). We do not know what appellant said in his argument, which apparently prompted the remark of the prosecutor, because appellant directed that the transcript before us not contain his argument, and for this reason we cannot conclude that there was an abuse of that discretion.

■ An additional reason exists why we cannot find prejudical error. Appellant now asserts that the remark "was a comment on the character of the accused inferring that the prosecutor knew more about the defendant's guilt than the evidence might show." As previously noted, appellant's objection was general and no reason was stated. Unless the erroneous feature was perfectly obvious, which it was not in this case, such an objection was insufficient. *State v. Lang*, 515 S.W.2d 507 (Mo.1974). Also, the assignment in the motion for new trial was limited to the assertion that the court "committed error in refusing to sustain defendant's objection." Therefore, the reason now asserted was never presented to the trial court, and on appeal the ground of objection is normally limited to that stated at trial. *State v. Johnson*, 483 S.W.2d 65 (Mo.1972).

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.