**STATE of Missouri, Respondent,**

v.

**John Mack BUFORD, Appellant.**

**No. WD 31776.**

Missouri Court of Appeals,
Western District.

May 26, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 23, 1981.

Application to Transfer Denied
Sept. 8, 1981.

Joseph R. Colantuono and June Clark, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Suzanne M. Boersig, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

MANFORD, Presiding Judge.

This is a direct appeal from a jury conviction for robbery, first degree. The jury affixed punishment at 15 years. This punishment was enhanced by the court to 25 years upon finding the persistent offender statute applicable. The judgment is affirmed.

Appellant filed a pro se brief, which was joined by brief of counsel. Two points of error are presented, which allege that the trial court (1) committed plain error by interrogating a defense witness and (2) erred in failing to sustain appellant's objection and motion for mistrial because of remarks made by respondent's counsel during the closing argument.

■ Respondent moves this court to dismiss this appeal as untimely; however, the notice was filed within the ten days permitted under Rule 30.01(d), so respondent's contention is found to be without merit. In addition, respondent contends that appellant's brief does not comply with Rule 30.-06(d) because it fails to state what actions of the trial court should be reviewed under his points relied on within his brief. Respondent argues that this failure demands dismissal since no points have been preserved for review and the allegations within the brief do not rise to the level of plain error. Respondent is correct in stating that appellant's points are conclusory and therefore fail to comply with *State v. Davis*, 556 S.W.2d 745 (Mo.App.1977); *State v. Robinson*, 551 S.W.2d 309 (Mo.App.1977) and Rule 30.06(d). Review, however, is urged under the plain error rule (Rule 29.12[b]), and such review can be made of alleged errors not otherwise properly preserved. However, relief under Rule 29.12(b) can and will be granted only when there is a showing of manifest injustice or a miscarriage of justice.

The sufficiency of the evidence is not challenged, and a brief recital of the facts, along with the declaration that such evidence supported the finding of appellant's

guilt by the jury, suffices. During the morning hours of December 29, 1979, appellant, along with two companions, robbed the owner of a sawmill in eastern Jackson County. The armed robbery took place in the yard area of the sawmill, and the robbers secured over $1,600 in cash from their victim. The two escaped in a black-over-brown Cadillac. The victim fired a shot at their vehicle and gave chase, but without success. The local police were alerted and minutes later, appellant and his two companions were arrested some two miles from the scene of the robbery. The handgun used in the robbery, along with cash, personal papers and identification belonging to the victim were found in the escape vehicle. The victim positively identified appellant as one of the two men who robbed him, and also identified the weapon used in the robbery.

During trial, appellant called Raford Hunter as a defense witness. Hunter was charged with the same offense and was awaiting trial. Before Hunter took the stand, appellant's counsel informed the court that Hunter's case had not been resolved and that he (Hunter) intended to invoke the 5th Amendment and to refuse to answer any questions. Out of the presence of the jury, Hunter phoned his attorney. The court asked Hunter if he intended to take the 5th amendment and Hunter advised the court of his intention to do so. Hunter took the stand and after identifying himself and admitting that he was also charged with the same offense, the following exchange took place:

(By Mr. Colantuono, defense counsel)

"Q. On December 29th of 1979 did you have contact with and run into Mr. Buford?

A. I have nothing to say.

Q. Could you please speak up?

A. I say I ain't got nothing to say.

Q. On the 29th of December of 1979 did you ride in a car in which Mr. Buford entered at some point along 23rd Street in Independence?

A. I still ain't got nothing to say.

Q. Do you have any information that Mr. Buford was involved in a robbery of the BeeMac Sawmill on December 29th of this last year?

A. No.

Q. You say 'no'?

A. No. I ain't got nothing to say.

Q. No, you have no information that he was involved in the robbery? Is that what you're saying?

A. I don't have nothing to say.

Q. Will you be answering any questions which I present to you in regard to the alleged robbery on December 29th at the BeeMac Sawmill?

A. No. No.

MR. COLANTUONO: In light of that, Your Honor, we'll have no further questions for Mr. Hunter.

### CROSS-EXAMINATION

*BY MR. HALL*: (prosecuting attorney)

Q. Mr. Hunter, you, in fact, drove out to that sawmill with John Buford and with a man by the name of Rudolph McClure, didn't you?

A. No.

Q. You did not go out there with them?

A. No. I ain't got nothing to say.

Q. Are you stating that you did not go out there with John Buford and Rudolph McClure?

A. I'm stating that I ain't got nothing to say.

Q. Well, now, you have previously told officers of the Independence Police Department that you, in fact, went out to that sawmill with Rudolph McClure and John Buford, haven't you?"

At this juncture, appellant's counsel requested a bench conference, during which the following discussion was held:

"MR. COLANTUONO: Your Honor, in light of the fact that this witness has not answered any questions regarding the merits of the charge or what actually happened, it is improper to impeach him at this time with his prior statement and I would object to any questions in which Mr. Hall asks whether he did, in fact,

state to police that Mr. Buford was involved or that he, himself, was involved. MR. HALL: Well, Your Honor, when asked by Mr. Colantuono and myself if he went out there with Mr. Buford he stated, 'No.' He has not invoked his Fifth Amendment right on the stand in front of this jury. THE COURT: Well, we're in a delicate area because the witness told the Court that he intended to answer no questions. There is some ambiguity in that he did state, 'No,' in answer to a question, which could mean that he's making some answer. I am going to question the witness before I rule on the cross-examination. MR. COLANTUONO: Okay."

It is apparent from the record that the trial judge was attempting to clarify the situation before ruling on the propriety of any further examination of this witness by respondent's counsel. In this quest, the record reveals precisely what inquiry the trial court undertook:

"THE COURT: Mr. Hunter, it is correct that you were brought here today and that at the Court's direction you called Charles Brown, your attorney, at home, isn't that true? THE WITNESS: Yes. THE COURT: And before the jury came just now the Court spoke to you about the fact that because Charles Brown was at home ill today and by his agreement and consent I had you call and talk to your attorney—well, isn't that true? THE WITNESS: Yes. THE COURT: And you advised the Court before the jury came in that your decision was that you did not wish to testify in this case to any matters at all, is that a fair statement? THE WITNESS: Yes. THE COURT: Now, I'm going to question you on one matter because when Mr. Colantuono asked you a question about December 29th you answered 'no' as to whether or not this defendant went with you or some such question. Was it your intention to make any statement or give any testimony about any activities of December 29th at all?

THE WITNESS: No. THE COURT: The only reason you answered 'no' to a question was that you intended that that mean that you did not intend to make an answer? Is that a fair statement? THE WITNESS: Yes. THE COURT: Is it your intention here today to refuse to make any answer to any question regarding you or anyone else in any activities of December 29th, 1979? THE WITNESS: Yes. THE COURT: Is that your intention? THE WITNESS: Yes. THE COURT: The Court sustains the objection."

In his point (1), appellant argues that the "interrogation" by the trial judge amounted to plain error in that it was conducted in such a manner as to indicate to the jury the court's opinion regarding the meaning of a statement made by the witness. No objection was made to the court's questions. The point is reviewed to determine if manifest injustice or a miscarriage of justice occurred to the prejudice of appellant, see *State v. Jones*, 462 S.W.2d 715 (Mo.1971); *State v. McCullough*, 411 S.W.2d 79 (Mo. 1967); *State v. Sullins*, 582 S.W.2d 732 (Mo. App.1979) and Rule 29.12(b).

Appellant's apparent argument is that the combination of questions by defense counsel and the court amounted to an expression of opinion by the court that witness Hunter did not intend to testify; rather, that he intended to disavow any particular facts about the offense charged. It is impossible for this court to reach the same conclusion from a reading of the foregoing testimony. Moreover, if appellant's interpretation of the questions and answers is applied, no prejudice to appellant is reflected therein. It needs to be pointed out that the court, out of the presence of the jury, had been advised by this witness of his refusal to testify, and the testimony of the witness given just prior to that portion now attacked by appellant disclosed the unwillingness of the witness to testify.

■ The trial judge had every good reason to assume that this witness intended to refuse to testify. In his attempt to clarify the witness's unwillingness to testify on any substantive issue, the trial judge properly asked two additional questions (see above). It is apparent that the initial response from the witness was at best ambiguous and that the trial judge had the authority to clarify the situation. As has been held, "'. . . One of the natural parts of the judicial function . . . is the judge's power and duty *to put* to the *witnesses* such *additional questions* as seem to him desirable to elicit the truth more fully.'" (Citations omitted) See *State v. James*, 321 S.W.2d 698, 704 (Mo.1959). The prohibition lies in preventing a judge from indicating or expressing his opinion by comment or question upon the merits or the evidence in a case, see *State v. Cain*, 485 S.W.2d 60 (Mo.1972); *State v. Crafton*, 579 S.W.2d 662 (Mo.App. 1979) and *State v. Eddy*, 564 S.W.2d 938 (Mo.App.1978). Trial judges may clarify testimony by repeating what they understood to have been said absent any inflection or facial expression indicative of disbelief of the witness's testimony, see *State v. Eddy, supra.*

Appellant asserts that the court's questions caused the witness to "clam up" or to appear as though he had or was about to commit perjury. This assertion is patently absurd. The jury and everyone else present in the courtroom knew that this witness was charged with the same offense and was not about to testify to any substantive matter concerning this offense. The record makes it quite clear that the court, in its inquiry of this witness, resolved the ambiguity caused by the witness's "no" answer. Following the court's inquiry, the court, to the further protection of appellant, sustained an objection that prevented respondent's counsel from making further inquiry.

Appellant's assertion that this case is controlled by *United States v. Nelson*, 529 F.2d 40 (8th Cir. 1976), cert. denied 426 U.S. 922, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976), illustrates appellant's misunderstanding of the *Nelson* case. *Nelson* stands for the proposition that the court should, for the purpose of determining whether or not the witness desires to invoke the 5th amendment, conduct such inquiry outside the presence of the jury. *Nelson* is factually distinguishable from the instant case.

The record fails to support appellant's contention in his point (1). The trial judge properly made inquiry of the witness so that the situation could be clarified, the respondent be prevented from any further unwarranted inquiry and the trial proceed in an orderly fashion. There is no error upon this record (as appellant contends there is), or any manifest injustice or miscarriage of justice which would afford relief to appellant. Because this court finds no prejudice or merit to appellant's point (1), said point is ruled against appellant.

In his point (2), appellant contends that the trial court erred in failing to sustain his objection and in refusing to grant a mistrial upon a statement made by respondent's counsel during the closing argument. That statement was: "Why wasn't the gun thrown out? I think you can use your common sense to determine why you don't throw out a gun. It is something to be used." Appellant argues that the foregoing statement was prejudicial error because it suggested that the gun was going to be used for and in conjunction with future criminal activities and that it tended to show that appellant had criminal proclivities.

■ It is improper for a prosecutor to argue either that an accused is inclined toward criminality or that it is necessary to deter him from future criminal activity, see *State v. Raspberry*, 452 S.W.2d 169 (Mo. 1970) and *State v. Wintjen*, 500 S.W.2d 39 (Mo.App.1973). Each case must be reviewed in the light of its individual facts and circumstances to determine if the prohibition has been transgressed. Where remarks which reference future criminal behavior are clearly retaliatory, no such impropriety as prohibited in *Raspberry* and *Wintjen* arises. See *State v. Granberry*, 484 S.W.2d 295 (Mo. banc 1972) and *State v. Harris*, 558 S.W.2d 282 (Mo.App.1977). It is

upon this rule and the exception concerning retaliatory comments that this point must be reviewed.

 The theory of appellant's defense pursuant to his own testimony was that he was hitchhiking and was picked up by the robbers in the few-minutes interval between the commission of the offense and apprehension by police officers. During closing argument, defense counsel argued to the jury that the victim's identification papers, driver's license and a gun were found in the escape vehicle. He also argued that the victim's billfold and the caps worn by two of the robbers were missing. Defense counsel, in his argument, asked of the jury, "If the caps were thrown out why was the identification card left in, why was the driver's license there, why was the gun there, why were all of these papers there?"

In response to the defense argument, the prosecutor argued to the jury that portion set forth and now attacked by appellant. From the record and within the context in which the prosecutor's statement was made, it is clear that it was purely retaliatory to defense argument. The comment made by the prosecutor was invited by defense argument. While a prosecutor may not argue matters not in evidence, State v. Bellew, 586 S.W.2d 461 (Mo.App. 1979) and State v. Hooker, 536 S.W.2d 487 (Mo.App.1976), and where the argument complained of is retaliatory in nature and invited by remarks of opposing counsel, a claim of error will not be sustained. See State v. Hammond, 578 S.W.2d 288 (Mo. App.1979) and State v. Knighton, 518 S.W.2d 674 (Mo.App.1975). In retaliation, a prosecutor is permitted to go further than in the first instance, and the trial court has considerable discretion relative to such remarks. See Bellew and State v. Watson, 588 S.W.2d 20 (Mo.App.1979).

It is clear from the record that the statements were retaliatory and well within the acceptable range. See Harris, supra; State v. Vance, 541 S.W.2d 733 (Mo.App.1976) and State v. Coleman, 524 S.W.2d 27 (Mo.App. 1975). Appellant argues this point is controlled by State v. Groves, 295 S.W.2d 169 (Mo.1956). Groves is not controlling because the issue therein was not whether or not the comments were retaliatory. The record fails to support appellant's contention that the court erred in failing to sustain his objection and in refusing to declare a mistrial upon the prosecutor's comments in final argument. Point (2) is found to be without merit and is ruled against appellant.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.