STATE of Missouri, Respondent,

v.

Byron D. BRITTON, Appellant.

No. WD 33548.

Missouri Court of Appeals,
Western District.

Dec. 21, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Feb. 8, 1983.

George A. Wheeler, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

MANFORD, Presiding Judge.

This is a direct appeal from judgment upon jury convictions for forcible rape, forcible sodomy, burglary first degree and two counts of robbery first degree. The judgment is affirmed.

Three points are presented, which in summary charge the trial court with error in (1) overruling appellant's objection to prosecution's statement in final argument; (2) failing to sustain appellant's pre-trial motion to dismiss the indictment because the proceedings were improperly transferred from the juvenile court; and (3) overruling appellant's objection and allowing the prosecutor to ask leading and suggestive questions.

The sufficiency of the evidence is not challenged. A brief summary of the pertinent facts suffices.

At about 8:30 p.m. on the evening of October 26, 1980, the victims of these crimes were jogging on the public streets near their home. Appellant and his accomplice observed the victims. Appellant's accomplice (named James) decided to rob the victims and retrieved a handgun from his residence. Appellant and James approached the victims from the rear, telling them not to turn around, and demanded their money. One of the victims (the husband) gave them his billfold. The two were dissatisfied with the amount of money in the billfold and demanded more. Appellant and his accomplice accompanied the victims to their home. Upon arrival, one of the victims (the wife) gave the two money from her purse. At this point, the victims were separated. At gunpoint, the husband was placed in the bathroom. The wife was taken to an upstairs bedroom, where she was ordered by James to remove her clothes. She was raped. Appellant and James then exchanged places. Appellant attempted to rape the wife. The wife was uncertain whether penetration was achieved by appellant. The two forced the wife to perform oral sex on them. The weapon was then placed inside the vagina of the wife. Other property was stolen from the residence before the two departed.

Fingerprints were secured from the victims' home which matched James and appellant. Appellant's defense was that he denied any of the above acts, but had entered the victims' home in their absence to burglarize it. Appellant testified that he intended to steal a stereo and borrowed a relative's auto in his attempt to transport the stereo.

The husband could not identify either James or appellant. The wife stated that she was 75% sure of her identification of appellant. James, in exchange for a 15-year sentence, testified for the state regarding his and appellant's participation in the robbery, rape, sodomy, and burglary. Charges of kidnapping and armed criminal action were dismissed. The jury returned its verdict. Judgment was entered. After trial motions were filed and overruled and this appeal followed.

In his first point, appellant charges that the trial court erred by overruling his objection to a statement by the prosecutor during final argument. The challenged statement, it is contended, was a personalized statement which substituted the prosecutor's credibility for the credibility of witness Rodney James. From this, it is concluded by appellant that he was denied a fair trial. The challenged statement, it must be noted, occurred in the last portion of the state's argument. It reads as follows:

"Ladies and gentlemen, as a prosecutor, this is one of many cases I try. And I don't put my license on the line for one case and that is what I would be doing if I were to do that."

At this point, appellant's counsel objected, charging that the above statement was "the personalization of the argument." He went on to state, "I would at this time move for a mistrial based upon Mr. Hall's personalized argument." The objection and motion for mistrial were overruled.

In order to clarify the above and to reveal disposition of this alleged error, two things must be set forth. The above statement occurred in the last portion of the state's final argument. As a preface to the

challenged statement, the record discloses (and it is not referenced by appellant) the following:

"MR. HALL: Ladies and gentlemen, there are just a few more things I want to cover in answer to what Mr. Colantuono has just said. First of all, as to the plea bargain, when I sat up there yesterday after the testimony with Rodney James, the testimony of Mr. James was I did not threaten him concerning the plea bargain. The plea was already there. The testimony from Rodney James was that the only thing I ever told him was to tell the truth. Mr. Colantuono has at least put into evidence—tried to put into evidence that I would tell him to lie.

MR. COLANTUONO: I object. That is not what I did or what I attempted to do. The question is whether Rodney James would lie, not whether Mr. Hall would instruct him to. I have no doubt that Mr. Hall would never instruct a witness to be deceptive.

THE COURT: The objection to the argument is overruled.

MR. HALL: Or that I would threaten Rodney James if he didn't change his story today, that I would take away the plea bargain."

There then followed the above challenged statement.

As noted, appellant contends that the above challenged statement was the personalization of the argument in such manner as to substitute the credibility of the prosecutor for that of witness James, thus denying appellant a fair trial. Respondent's reply is that the challenged statement was "permissible retaliation to appellant's final argument that witness James was merely stating what the prosecutor wanted to hear in that such statement suggested to the jury that the prosecution encouraged James to say what it wanted him to say regardless of its truth."

The record reveals the following portion of appellant's final argument:

"You may take into consideration any interest, any bias or prejudice the witness may have. Mr. Hall indicated that I was going to jump all over the plea bargain. I am not going to. It is a fact. You know about it. And I think each and every one of us is aware that when Mr. Hall sat over here with Rodney James last night and talked to him and Rodney James said this morning, 'Yeah, we talked about that plea bargain,' every one of us in this courtroom knows what Mr. Hall wanted to hear, what Rodney James needed to say to protect himself."

Obviously, the credibility of witness James was at issue. This is evident on this precise point, and it is reflected again within appellant's last point presented. It is also obvious from the foregoing portion of appellant's argument that appellant not only attempted to persuade the jury that James' testimony was false, but suggested to the jury that if the prosecutor did not in fact invite fabrication by James, he (the prosecutor) was willing to participate in testimony by James which indicated that James was forced to testify as to appellant's participation in the crimes so he (James) could protect and fulfill his part of his own plea bargain.

We conclude that appellant's argument went further than a suggestion that James' testimony was merely false, but in fact suggested that the prosecutor participated in the fabrication of James' testimony. Under these conditions, the prosecutor was within his rights to comment upon such argument by appellant.

It is unquestioned that the scope of final argument lies within the sound discretion of the trial court and rulings relative thereto will not be disturbed unless there is a clear showing of an abuse of that discretion. *State v. Frankoviglia*, 514 S.W.2d 536, 539 (Mo.1974); *State v. Ralls*, 583 S.W.2d 289, 292 (Mo.App.1979) and *State v. Stamps*, 569 S.W.2d 762, 769 (Mo. App.1978). Another rule has evolved, which provides that in those cases where an argument by the prosecution might be otherwise improper, it is permissible for a prosecutor to retaliate in regard to an issue raised by the argument of the accused.

*State v. Wood,* 596 S.W.2d 394 (Mo.1980), cert. denied 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). In the instant case, had the challenged statement been made in the absence of any comment, reference, or suggestion in appellant's argument, the statement would have been improper. Our courts have set forth the standard to be applied in determining the permissibility of such argument. In *State v. Buford,* 619 S.W.2d 777, 782 (Mo.App.1981), this court declared, "where the argument complained of is retaliatory in nature and invited by remarks of opposing counsel, a claim of error will not be sustained." We conclude that this is precisely what occurred when the whole record is considered, including the entirety of final arguments by both parties. Appellant invited the statement via his own final argument as noted above. The response by the prosecution was directed precisely to that point raised in appellant's argument. With the invitation made, the prosecution was thus entitled to retaliate. *Buford, supra.* The trial court did not abuse its discretion in overruling appellant's objection, or in its refusal to grant appellant a mistrial.

Point (1) is meritless and is ruled against appellant.

 Under his point (2), appellant charges that the trial court erred in denying his pre-trial motion to dismiss the indictment. To support this contention, appellant charges that this was error because "the prosecution of appellant improperly transferred from the juvenile division of the circuit court in violation of R.S.Mo. Section 211.071 and Rule 118.01 which require that the filing of a petition in the juvenile division precede any transfer of prosecution to the adult court and no such petition was filed in the juvenile court concerning the changes which were presented in the indictment, thereby depriving the trial court of jurisdiction over the charges of appellant."

Perhaps the simplest manner in which to approach this particular issue is to refer to the record in the case. Contrary to what appellant asserts, there was a petition filed in juvenile court as to this appellant. This petition was dated April 11, 1980. It is contended correctly by appellant that this petition did not contain the allegations of the charges involved in the instant proceedings, but that the filing of this petition vested jurisdiction over appellant in the juvenile court. The petition also earmarks the record of appellant's contact with the juvenile authorities. Orders of the juvenile court were entered relative to the original petition. A series of motions to modify the juvenile court order followed and these motions were met by appellant's motions to dismiss. In addition to these proceedings, various requests for detention and for an order of detention were entered and were likewise challenged by appellant. This continued activity, during which the juvenile court retained jurisdiction over appellant, lasted from April 11, 1980, the date of the original petition, until April 10, 1981, the date of the juvenile judge's order dismissing the motion to modify the court's order filed by the juvenile officer, and the further order that appellant be discharged from the jurisdiction of the Juvenile Court and be prosecuted under the general law.

As indicated in the interim (April 11, 1980 to April 10, 1981), several motions to modify, requests for detention and motions to dismiss were filed and ruled. Under date of February 9, 1981, the juvenile officer filed a motion to modify the Juvenile Court's order. In this motion, the present charges (additional to other offenses) were included. A hearing was conducted on the motion on April 9, 1981. On April 10, 1981, an order was entered dismissing the motion to modify which discharged appellant from the jurisdiction of the Juvenile Court so that appellant could be prosecuted under the general law.

Appellant suggests that the Juvenile Court lacked jurisdiction to order him to be tried under the general law. In support of this contention, appellant argues that there must have been filed another "petition" alleging the specific charges for which he now stands convicted.

Appellant overlooks the fact that jurisdiction over him was initially acquired upon the filing of the original petition. Such jurisdiction may be continued until the juvenile reaches the age of 21 years. § 211.041. In addition, our statutes prescribe the modification of Juvenile Court orders. § 211.251. Jurisdiction remained in the Juvenile Court as a result of subsequent motions to modify as has been ruled in the case of *In Interest of S.L.M.*, 618 S.W.2d 239 (Mo.App.1981). The court in *S.L.M.* pointed out:

"The jurisdiction point is without merit. The juvenile court had already accepted jurisdiction over the person of S.L.M. by virtue of the pleadings and proof attendant to its September 26, 1979 order. The juvenile court never relinquished its jurisdiction but had on numerous occasions, stimulated by the subsequent motions to modify, specifically retained jurisdiction as per § 211.041, RSMo 1978. Also, see *State ex rel. McCarty v. Kimberlin*, 508 S.W.2d 196, 199 (Mo.App.1974), and *J.D.H. v. Juvenile Court of St. Louis County*, 508 S.W.2d 497, 499–500 (Mo. banc 1974). The juvenile court retained continuing jurisdiction to modify or amend its earlier orders when circumstances would so dictate. Section 211.251.2, RSMo 1978; *Kimberlin, supra.*"

We find *S.L.M.* to be controlling on this point. As a concluding note, appellant's contention that a "new petition" must be filed in each instance would require an unnecessary and unwarranted step in the orderly processing of juvenile matters. There is nothing within § 211.011 through § 211.431 or our rules which requires the filing of subsequent petitions.

We conclude that on April 10, 1981, the Juvenile Court had jurisdiction over appellant. The juvenile officer filed a motion to modify the Juvenile Court's order pursuant to § 211.251 on February 9, 1981. The juvenile officer then filed a "motion to dismiss to allow prosecution under general law" on March 5, 1981. The juvenile court, after due notice, held a hearing upon the motions, in the presence of appellant, with counsel, and ordered dismissal of the juvenile officer's motion to modify. The court also ordered appellant discharged from the jurisdiction of the Juvenile Court and that he be prosecuted under the general law. We conclude that not only did the Juvenile Court have proper jurisdiction to enter such order, but that all proceedings relative to and which preceded entry of that order were in conformity with § 211.011 through § 211.431 and our rules.

There is no merit to appellant's point (2) and it is ruled against him.

In his final point (3), appellant charges that the trial court erred in overruling his objection to the prosecution's use of leading and suggestive questions during the direct examination of a prosecution witness.

The challenged questioning and testimony arose during examination of prosecution witness Rodney James referenced under point (1) above. Appellant contends that error arose "where counsel for the state was permitted to cross-examine Rodney James, his chief state's witness after pleading surprise and where there was no examination to disclose the nature of the surprise and counsel for the state really did the testifying, the court abused its discretion in permitting cross-examination and defendant is entitled to reversal."

The testimony and action taken by the trial court upon which appellant bases his alleged error is as follows:

"Q. You took the two people then to their house?

A. Yes.

Q. Byron Britton go with you?

A. Yes.

Q. Did he walk with you?

A. Yeah, behind, he was behind the people.

Q. Where were you?

Q. I was like behind them, but he was behind me.

Q. He was behind you?

A. Yeah, he was behind me.

Q. When you went into the house can you tell us the order the people went in the house?

A. Yeah, I ordered them to go in.

Q. What order did everyone go in the house?

A. In line, they was—the man and the woman and then me and then Byron.

Q. You were not the last one to go in?

A. No.

Q. Have you ever made a statement that you were the last one to go in?

A. Not to my knowledge.

Q. Did you make that statement to me?

A. I don't remember.

Q. Did you ever make a statement as to Byron ever having that gun at the time the actual robbery occurred of C____ L____?

MR. COLANTUONO: Excuse me. I would object in that he is attempting to impeach his own witness and he is cross-examining his own witness.

MR. HALL: May we approach the bench?

(Counsel approached the bench and the following proceedings were had out of the hearing of the jury:)

MR. HALL: Your Honor, this witness' statements that he has just given that Byron Britton remained in the background and took no part in the robbery is a complete surprise to me. I have talked to the man on several occasions. I, in fact, have talked to this man with Mr. Colantuono at which time he made an opposite statement to that. I am surprised by that. That is why I am cross-examining him.

MR. COLANTUONO: To that I will state I am perfectly aware and I will acknowledge that he has apparently made prior statements that would contradict this, but in light of the number of inconsistencies that this man has made and in light of the contradiction between prior statements, I don't know that any of us can claim real surprise. We may

not all have genuinely expected this, but I don't think we can claim that it is different from one of several statements because I think at one point in time he has said something different about each aspect of this case and I don't know if genuine surprise is the real—

THE COURT: There is no written statement?

MR. HALL: No, sir. There is no written statement. There is an oral statement that was tape recorded by Mr. Colantuono which we have a copy of in which that is reflected.

THE COURT: Defendant's objection is overruled. The Court finds that the prosecutor is surprised."

■ Appellant acknowledges and agrees that this matter is within the discretion of the trial court and a ruling thereon will not be overturned unless there is an abuse of that discretion. *State v. Castino,* 264 S.W.2d 372, 375 (Mo.1954) and *State v. Ayers,* 354 S.W.2d 878, 883 (Mo.1962). Appellant further acknowledges that leading and suggestive questions are permissible on direct examination when it is shown that the witness is hostile to the examiner or the examiner has been taken by surprise. *Putnam v. United States,* 162 U.S. 687, 16 S.Ct. 923, 40 L.Ed. 1118 (1896); *St. Clair v. United States,* 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936 (1894); *State v. Taylor,* 324 S.W.2d 643, 648 (Mo.1959). Appellant correctly points out, however, that this procedure is limited by *Ayers* in that such examination is not permitted on a basis of surprise if that examination is to reemphasize a particular part of the witness's testimony.

■ The record before this court in the instant proceedings is replete with reference to (and an understanding by all the parties) the fact that the state had entered into an agreement with witness James where James was to receive a 15-year sentence in exchange for his testimony at the trial of appellant. It is evident that the prosecution believed that James would testify at trial in accordance with his previous statements. As noted from the above testimony, James' testimony intimated that ap-

pellant was not involved in the offense. Upon appellant's objection, the issue was discussed at the bench. The trial court ruled correctly that the prosecutor was surprised by the testimony of witness James. There is nothing upon this record which brings this matter within the prohibition in *Ayers.* The trial court did not abuse its discretion in overruling appellant's objection.

Point (3) is found to be without merit and is ruled against appellant.

Judgment affirmed.

All concur.