STATE of Missouri, Respondent,

v.

Alfred SIMS, Appellant.

No. WD 32301.

Missouri Court of Appeals,
Western District.

July 6, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Aug. 31, 1982.

Byron Neal Fox, Robert J. Edwards, Kansas City, for appellant.

John Ashcroft, Atty. Gen. Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

Alfred Sims was jury tried and convicted of possession of a controlled substance, an offense proscribed by § 195.240, RSMo 1978. He now appeals the judgment of conviction and sentence of four years. Affirmed.

The state's evidence in the case was adduced from one witness, a Kansas City police officer. While in an unmarked police car, the officer observed a Cadillac automobile occupied by four persons and parked in front of a residence known to the officer to be a location where drugs had been used. The hour was late evening and the interior of the car was illuminated. As the officer approached to question the occupants, the car drove off at high speed. During the pursuit which followed, the Cadillac attempted to negotiate a turn, spun out of control and collided with a tree.

As the occupants emerged from the Cadillac, the officer informed them they were under arrest. Each was then subjected to a pat-down search. When the officer detected a bulge in one of Sims' socks, he was asked to remove the object, later found to be a roll of currency. In removing the money from his sock, Sims dislodged a plastic bag which fell to the pavement. On subsequent examination, the content of the bag was found to be heroin.

In his first point, Sims contends the trial court erred in failing to suppress the packet of heroin because that evidence was disclosed during an illegal search. Sims asserts that the police officer "lacked the necessary reasonable suspicion, based on objective facts, that appellant was involved in criminal activity that would be required to stop, detain and arrest him in the first instance."

In his Fourth Amendment contention, Sims relies principally on *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). The defendant in *Brown* was observed by police officers in an area, particularly an alley, known to be frequented by traffickers in illicit drugs. When stopped for questioning by the officers, the defendant refused to supply information about himself. He was thereupon arrested and charged with violation of a statute requiring persons lawfully detained to give identification on request. The charge was held to be constitutionally infirm because no objective facts within the purview of the officers supported any reasonable suspicion that the defendant was engaged in wrongdoing. Sims contends that he, like Brown, had done nothing to arouse conjecture of unlawful conduct and that the pursuit and investigative "pat-down" search violated Fourth Amendment guarantees.

The facts here are sharply at variance with *Brown*. Even were it to be assumed that the assembly of Sims and three companions in the automobile outside the suspect residence was not reasonably provocative of legitimate police inquiry, the immediate departure of the vehicle when the officer approached and the attempt to elude pursuit amply justified belief by the officer that criminal activity was afoot.

Investigative detention is lawful if, in the totality of the circumstances, a particularized suspicion results that the person stopped is engaged in wrongdoing. The retrospective evaluation takes into consideration the inferences which would be drawn by a trained police officer and the evidence is to be viewed as seen by one versed in law enforcement. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).[1]

---

1. Sims makes no point of the validity of the putative arrest perfunctorily announced by the officer when he first confronted Sims and the others as they emerged from the wrecked Cadillac. That arrest did not serve as the origin of prosecution in this case which followed Sims'

In the present case, the suspicion of the officer aroused by the parked automobile with four occupants was validated when the car sped off and attempted to avoid interception. That series of events, although not particularized in focusing attention on any one of the persons in the car, was sufficient to justify the officer's pursuit and the subsequent inquiry as to the activities of those found to have been in the vehicle. The investigative stop was lawful because the facts justified a police officer in a belief that some criminal act had been or was being committed and the persons in the car were involved.

Once the automobile had been stopped, questioning of the occupants outside the vehicle was permissible. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Although there was then no objective proof on which an arrest could have been made, except for the traffic offenses and failure to stop on police direction, the officer was entitled to conduct a limited search of the persons of the detainees for weapons if, under all the circumstances present, the officer was warranted in believing that his safety would be in danger. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The fact that Sims and his companions were suspected to be involved in narcotics dealing, the violent maneuvers and reckless operation of the Cadillac under police pursuit and the numerical disadvantage of the lone police officer combine to justify a preliminary search of the suspects for protection of the officer's safety. Sims has no constitutional basis to complain that the contraband was discovered during the limited body search which accompanied the investigative detention.

Irrespective of the foregoing, Sims has no factual basis to complain that the drug packet was the product of an unlawful search and seizure. While the officer testified that the packet fell when inadvertently dislodged by Sims in the course of removing the roll of currency from his sock, Sims testified that he had never seen the packet before, that he had no knowledge as to how the packet came to be found on the ground, but that it certainly did not come from his person. Assuming that version of the facts consistent with the verdict for conviction, discovery of the incriminating evidence was inadvertent and fortuitous. Evidence which inadvertently comes into the view of an officer lawfully acting in connection with another crime or for some different purpose may be used in the prosecution of a crime to which that evidence is pertinent. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

In his second point, Sims asserts he was entitled to a dismissal of the case "because of prosecuting official's use of peremptory challenges to systematically exclude blacks from the jury without cause." The argument contends all black members of the panel were stricken when the state employed its peremptory challenges and this exclusion of a cognizable group denied Sims a representative jury drawn from a cross section of the community.

The theory which Sims espouses is articulated in a California case, *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978), which he cites. The California Supreme Court, in the interpretation and application of the California state constitution, holds in *Wheeler* that counsel may raise the issue of representative jury composition upon a showing that jurors peremptorily challenged share only the one characteristic of group association and that group bias alone formed the basis for challenge. Once evidence on the issue has been presented sufficient to raise the reasonable inference of a prima facie case, the burden shifts to the opposing party to demonstrate that peremptory challenges were used, not on grounds of group bias, but on facts rele-

---

arrest under a subsequent warrant. Assuming, however, that the officer had no basis to arrest Sims until the packet of drugs was discovered, the officer nonetheless had lawful grounds to detain Sims for investigative inquiry. The patdown search is therefore valid as an incident of that detention and not as an incident of arrest.

vant to the particular case, the parties or witnesses.

Sims cites no Missouri case in point.[2] For several reasons, we find the contention to be without merit.

■ The record in this case contains no evidence, even under the theory of the *Wheeler* case, sufficient to raise any inference that the state's peremptory challenges were used to produce a trial jury of homogeneous composition. Sims bases his claim solely on the statements made by his counsel during argument which statements gratuitously noted the apparent racial origin of four panel members stricken by the state. The record includes no voir dire and no stipulation of facts and no evidence whatever that blacks were systematically excluded. This dearth of proof is fatal to the contention. *State v. Johnson*, 566 S.W.2d 510, 514 (Mo.App.1978).

■ Even were it to be assumed that the jury panel summoned included only four persons of the Negro race and that those persons were removed by exercise of the state's challenges, it is the burden of the contestant under the California theory of group association also to show that the panel members stricken are as heterogeneous as the community as a whole, that is, they are males and females and are of a variety of ages, occupations and social or economic conditions. *People v. Wheeler, supra,* 22 Cal.3d at 280, 148 Cal.Rptr. 890, 583 P.2d 748. Sims chooses here simply to rely on the bare contention the panel members excluded were black without argument or proof that those stricken were otherwise representative of the community in general.

Finally, the contention is unsupportable under Missouri case law, recognizing of course that interpretation and application of the California Constitution by California courts has minimal persuasive effect in Missouri.[3] The argument Sims makes here was advanced in *State v. Baker*, 524 S.W.2d 122 (Mo. banc 1975), and was there rejected. In addition to the claim that the prosecutor had deliberately employed peremptory challenges to strike all Negroes, Baker asserted the practice to have been of long standing in similar cases. Based on *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the *Baker* court held a valid claim to abuse of peremptory challenges in selection of discriminatorily composed juries required the contestant to allege and prove (1) use of peremptory strikes by the prosecutor in case after case to exclude blacks; (2) employment of the practice whatever the circumstances of the crime and whoever the defendant or the victim may have been; and (3) a result that Negroes did not serve on petit juries.

■ In the present case, even assuming an adequate record to undergird the charge of an unrepresentative jury, Sims makes no allegation that the state has followed a practice generally of striking Negroes from jury panels nor does he contend any system-wide effect on the composition of petit juries resulted. He suggests only that his trial jury was discriminatorily chosen. While *People v. Wheeler, supra* does appear to sanction a case by case test for use of peremptory challenges, *State v. Baker, supra* is controlling precedent in Missouri and precludes consideration of the California doctrine as applicable here.

In his last point, Sims asserts the trial court to have erred when it overruled his motions for mistrial lodged when the prosecutor voiced a comment during cross-examination of Sims, and when the prosecutor, in

2. The result reached in *Wheeler* is at variance with the position adopted by the United States Supreme Court in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Massachusetts has followed the California view in *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499 (1979). In *Commonwealth v. Henderson*, 438 A.2d 951 (Pa.1981), the Supreme Court of Pennsylvania suggests that the *Wheeler* approach perverts the purposes of the per-emptory challenge. At this time, the doctrine appears to have found acceptance only in California and Massachusetts.

3. Sims has cited no applicable provision of the Missouri Constitution and has made no effort to demonstrate that the California Constitution contains guarantees duplicated in the Missouri Constitution.

closing argument, made reference to other crimes. The first instance was during cross-examination on the subject of prior convictions in the municipal court. Sims had acknowledged his occupation to be that of a gambler and that he had suffered convictions for those activities. The prosecutor asked if he had been convicted for carrying a weapon and Sims denied that he had. The prosecutor then stated, "We'll deal with that tomorrow." No evidence thereafter followed either to affirm Sims' statement that no charge of carrying a weapon had been successfully prosecuted against him or to establish factual support for the prosecutor's question and to impeach Sims' credibility. Sims argues that he was entitled to a mistrial because the prosecutor's comment, not later supported by a conviction record, unfairly created the inference that Sims was lying to conceal his conviction.

The difficulty with the point is that this record does not admit of an assumption one way or the other as to what the actual state of Sims' convictions in the municipal court may have been. Sims assumes the failure of the state to produce the conviction record establishes that there was none, or, that the question was posed in bad faith. The mere fact that a prosecutor may inquire about prior convictions and thereafter not adduce independent proof on the question does not create an inference of improper motive. There is no duty on the prosecutor to produce a conviction record when inquiry on the subject produces a negative response from the defendant. *State v. Huff,* 537 S.W.2d 836 (Mo.App.1976). The trial court did not err in refusing the request for a mistrial, the only relief Sims requested.

The second instance of which Sims complains occurred during the final portion of the prosecutor's closing argument. The statement was as follows:

"Mr. Rosen states that Mr. Sims is not a drug-user, is not a drug-seller. There is no evidence that he has been, and the reason for that is because he's never been convicted of it before. That doesn't mean that he never has or he never was. That means he's never been convicted."

Sims argues that he was entitled to a mistrial because the statement injected the issue of other crimes for which he was not charged and prejudiced his case by suggesting to the jury that he used and sold drugs.

To appraise the content of the state's argument, the nature of the case and the defendant's argument which had earlier been given must be considered. The charge against Sims was possession of heroin. Although the identity of the substance in the packet as heroin was stipulated, it was Sims' contention that the packet had not been in his possession. He explained his possession of more than $3000.00 in currency rolled up in his sock by stating that he made his living as a gambler and carried large sums of money for this purpose. He acknowledged frequent contacts with the police and appearances in municipal court on charges of gambling and "lotterying."

In closing argument, Sims' attorney sought to dilute the adverse effect of Sims' unlawful activities and numerous encounters with police and the courts by observing that Sims' conduct in those areas was not the subject of his present trial for possession of heroin. In a further effort to exclude other possible considerations from the minds of the jurors, he then stated:

"So, with that in mind, let me state that Mr. Sims is not a dope addict or a heroin trafficker. There was never any evidence of that, and it is not the case."

The statements made by the prosecutor followed these remarks by defense counsel and were, as noted in their content, responsive to the defense argument that Sims was not otherwise involved in drug offenses.

It is proper for the prosecutor to retaliate to an issue raised by defendant's argument even if the prosecutor's comment would otherwise be improper. *State v. Wood,* 596 S.W.2d 394, 403 (Mo. banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). In retaliation a prosecutor may exceed the bounds otherwise limiting the content of his initial argument.

*State v. Buford,* 619 S.W.2d 777, 782 (Mo. App.1981). Considerable discretion is vested in the trial court to regulate the use of retaliatory arguments. *State v. Shields,* 619 S.W.2d 937, 941 (Mo.App.1981).

While it would otherwise have been impermissible for the state to argue that Sims should not be assumed innocent of involvement in drug traffic because he had not been convicted of such offenses, the argument here was invited by defense counsel's assertion that Sims was neither a user nor a seller of drugs. The state's argument was retaliatory and we do not find that the trial court abused its discretion in failing to grant a mistrial, again the only relief Sims sought.

The judgment of conviction and sentence are affirmed.

All concur.