STATE of Missouri,
Plaintiff–Respondent,

v.

George QUALLS.

George QUALLS, Movant,

v.

STATE of Missouri, Respondent.

Nos. 55033, 57488.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 14, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 12, 1991.

Application to Transfer Denied
July 23, 1991.

**650**

Ellen H. Flottman, Columbia, David C. Hemingway, St. Louis, for movant.

William L. Webster, Atty. Gen., Frank A. Jung, Breck K. Burgess, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

This is a consolidated appeal. Defendant/movant (hereinafter defendant) appeals his conviction in the Circuit Court of the City of St. Louis on the charge of possession of heroin, § 195.020 RSMo 1986 (repealed 1989). He also appeals the judgment of the motion court which denied his Rule 29.15 motion.

Defendant's sole claim on direct appeal is that the trial court committed plain error in

admitting into evidence a blue Dormin [1] bottle and its contents because such evidence was the product of an unreasonable search violating the defendant's Fourth Amendment Right. Defendant filed a pretrial motion to suppress the bottle and its contents. After a suppression hearing the hearing court overruled the motion and defendant proceeded to trial by jury.

■ Defendant's only contention is that the trial court erred in denying his motion to suppress evidence discovered on the lawn in front of 4053 West Bell. Although the defendant made a pretrial motion to suppress evidence discovered in the allegedly illegal search, he neglected to object when the evidence found on the lawn was introduced at trial. When a motion to suppress has been denied and the evidence is subsequently offered at trial, counsel must again make a timely objection in order to preserve the issue for appellate review. *State v. Yowell,* 513 S.W.2d 397, 402 (Mo. 1974); *State v. Harris,* 670 S.W.2d 526, 528 (Mo.App.1984). Accordingly, our review is limited to plain error affecting substantial rights resulting in manifest injustice or miscarriage of justice.

On June 10, 1987, in the City of St. Louis, Detectives Kurt Shrum and Terry James were on patrol having been assigned that day to the fugitive apprehension strike team. Their broadly defined duties included looking for persons wanted on felony warrants. The officers' decision to choose the area in the 4000 block of West Bell Street to investigate for persons with outstanding warrants, was prompted by the fact that it was an area frequented by users of narcotics. Both officers testified that they were familiar with the residence at 4053 West Bell and associated that house with heroin and cocaine trafficking. However, both officers acknowledged that they knew of no outstanding warrants for either the defendant or anyone residing at 4053 West Bell Street.

While driving in their unmarked patrol car, the detectives who were both in plain clothes observed the defendant exiting the front gate at the yard of 4053 West Bell Street. After first noticing the defendant, Detective Shrum, who was driving, slowed the patrol car down and drove it over toward the defendant. The defendant did not notice the detectives' presence until they were approximately twenty feet away from him.

Upon seeing the detectives' car slow down, the defendant abruptly stopped, turned around and walked back through the gate toward the residence at 4053 West Bell. Both detectives observed the defendant reach into his clothing with his left hand as he was turning his back to the officers. Detective Shrum testified that: "what attracted my attention was when he looked at us and he had this sort of surprised look on his face and then he put his hand down the front of his pants." As soon as the defendant turned around, Detective Shrum stopped the car and reached for his service revolver believing that defendant was reaching for a weapon. Detective Shrum simply exited the patrol car and stood next to it as Detective James began to approach the defendant. The detectives both testified that their initial purpose in approaching the defendant was to look at the defendant's face to compare it with the photographs they had in their patrol car of wanted fugitives.

After the defendant turned around and entered the yard, he took two or three steps back toward the house. At that time the officers observed him throw with his left hand what appeared to be a blue and white Dormin bottle into the grassy area of the residence he had previously exited. Both officers then believed they had observed drugs being abandoned and simultaneously ordered the defendant to stop. Detective Shrum moved toward the defendant while Detective James retrieved the jettisoned bottle, opened it and found 34 clear blue capsules containing a tan powdery substance. Subsequent testing by a criminalist at the St. Louis Police Department

---

**1.** Dormin is an over the counter sleeping pill that is frequently mixed with heroin by drug users.

Crime Laboratory revealed that the substance in the bottle was heroin.

Defendant did not object to the testimonial evidence of the bottle and its contents.

■ It is well held that the warrantless search or seizure of abandoned property does not violate the fourth amendment. *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). "The test for abandonment in the search and seizure context is distinct from the property law notion of abandonment: it is possible for a person to retain a property interest in an item, but nonetheless to relinquish his or her reasonable expectation of privacy in the object." *United States v. Thomas*, 864 F.2d 843, 845–846 (D.C.Cir.1989).

■ For purposes of fourth amendment analysis, the test for determining abandonment is primarily a question of intent and therefore an objective one, which may be inferred from "words spoken, acts done and other objective facts." *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973); *See State v. Achter*, 512 S.W.2d 894, 899 (Mo.App.1974). We will not disturb the trial court's determination that an abandonment occurred unless that finding is clearly erroneous. *United States v. Kendall*, 655 F.2d 199, 203 (9th Cir.1981), *cert. denied sub nom. Akers v. United States*, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982).

■ Both detectives testified that they observed the defendant, who was not in custody, turn around and walk back toward the house at 4053 West Bell Street immediately upon his seeing the unmarked patrol car. They both saw the defendant consciously throw, not accidentally drop, a blue Dormin bottle into the yard at 4053 West Bell. The detectives further observed the Dormin bottle land approximately five feet away from the defendant and the defendant did not move to retrieve it.

After being accosted by the detectives, the defendant immediately denied ownership of the bottle and its contents. He repeated his denial of ownership of the bottle and its contents at trial. The defendant further denied even having possession of the bottle when he was initially seen by the detectives.

While the mere denial of ownership of an object does not in all cases[2] result in a finding of a valid and "voluntary" abandonment for fourth amendment purposes, it is our belief that the defendant by throwing the Dormin bottle into the grassy area of the yard at 4053 West Bell Street, placed the bottle and its contents within the reach of the world generally, thereby relinquishing his reasonable expectation of privacy in that bottle.

■ In our determination that the trial court did not commit plain error in admitting the aforementioned evidence we must determine whether the police conduct improperly caused or precipitated the abandonment. *United States v. Koessel*, 706 F.2d 271, 274 (8th Cir.1983).

We review the actions of Detectives Shrum and James immediately preceding the discard of the Dormin bottle by the defendant. The detectives were on patrol in a high crime area looking for fugitives. They were in plain clothes and riding in an unmarked patrol car. The officers slowed their car down when they saw the defendant exit the house at 4053 West Bell Street—a house they associated with drug trafficking. The officers slowed their vehicle to better view the defendant's face and compare it with the pictorial list of fugitives they had in their car. When the defendant noticed the detectives' presence he immediately reacted and returned to the yard.

As soon as the detectives saw the defendant turn around, they stopped and exited their car. Detective Shrum testified that he reached for his gun but there is nothing further in the record showing that there were any other forms of force exhibited toward the defendant.[3] Both detectives ob-

**2.** *See* 1 W. LaFave § 2.6(b) pp. 474–475 (2d ed.1987).

**3.** Detective James testified that he did not recall pulling out his revolver and there is nothing in

served the defendant toss the Dormin bottle. At that point both detectives simultaneously requested the defendant to halt and he complied with their order.

There was no prolonged chase or surveillance of the defendant and the events leading up to the detectives' stop order occurred quickly. The detectives did not identify themselves as police officers, activate their siren, or address the defendant in any way until after they observed him throw the Dormin bottle. The detectives also did not block the defendant's movement or means of escape.

Defendant alleges that he was illegally seized *prior to* his relinquishment of the Dormin bottle, thereby tainting the subsequent seizure of the bottle and its contents. In determining whether the defendant was illegally seized within the meaning of the fourth amendment, we look to the standard just recently announced in *California v. Hodari*, —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), declaring that to constitute a seizure of the person, just as to constitute an arrest, there must be either the application of physical force, however slight, or where that is absent, submission to an officer's "show of authority" to restrain the subject's liberty.

The facts that the Supreme Court confronted in *California v. Hodari*, are similar to the ones involved in the case at bar. In *Hodari*, two police officers were on patrol in an unmarked police car in a high crime area. The officers were dressed in street clothes but wearing jackets with "Police" embossed on both front and back. The officers were on patrol and observed a group of four or five youths huddled around a car which was parked at a curb. The youths, one of which was Hodari, saw the officers' car approaching and began running away from the area. One of the officers chased after Hodari, caught up to him and tackled him. During the chase and just before Hodari was caught Hodari threw to the ground what turned out to be crack cocaine.

The Supreme Court denied Hodari's attempt to suppress the evidence relating to the cocaine because the Court found that no seizure of Hodari had occurred until he was actually tackled. The Court stated that no physical force was applied to Hodari since the officer did not touch him before Hodari dropped the cocaine. The Court went on to find that: "assuming that Pertoso's [policeman] pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." *Id.* at ——, 111 S.Ct. at ——. Citing *Brower v. Inyo County*, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989); *Hester v. United States*, 265 U.S. 57, 58, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924).

The defendant in the case at bar was not asked to stop until *after* he had thrown the Dormin bottle to the ground. Although the defendant submitted immediately upon the officers' "show of authority" in their requesting him to stop, we find that the defendant was not seized until *after* he abandoned the Dormin bottle and its contents. Therefore the evidence relating to the Dormin bottle and its contents could not have been suppressed at trial.

■ Defendant has further characterized the detectives' actions prior to their ordering him to stop as "hounding" and "harassing" the defendant. We disagree. The mere act of approaching an individual without any prior history of repeated "harassing" conduct directed toward that particular individual will not render the law enforcement officer's approach an illegal provocation making a defendant's abandonment "involuntary." *United States v. Brown*, 663 F.2d 229, 231 (D.C.Cir.1981) (en banc).

We find the conduct of the trial court did not affect the substantial rights of defen-

the record showing that Detective Shrum fully removed his revolver or used it in a threatening

manner at any time immediately preceding or during the encounter with the defendant.

dant. We find the trial court did not commit plain error. Point denied.

## POST CONVICTION RELIEF

Additional facts are necessary for a proper review of the motion court's denial of defendant's Rule 29.15 motion. Defendant filed his *pro se* Rule 29.15 motion on January 30, 1989. Defendant's *pro se* motion alleged general statements accusing his trial counsel of ineffective assistance and specifically alleged that his counsel failed to interview and call as a witness an unnamed police officer from the third district and that she failed to interview and call as a witness a certain witness, Bo Lacy.

█ Defendant now claims that the motion court clearly erred in failing to issue any findings of fact or conclusions of law specifically addressing defendant's challenge to trial counsel's failure to preserve a fourth amendment claim against the introduction of testimony concerning the Dormin bottle.

In support of his claim, defendant cites *Stanley v. State*, 786 S.W.2d 211 (Mo.App. 1990). His reliance on *Stanley* is misplaced. In *Stanley*, the movant testified as to all of the issues in his *pro se* motion. The motion court failed to address in its findings of fact and conclusions of law, all of the errors presented. We remanded for such failure. In the case at bar, the testimony elicited at the hearing only address the issue in point IV of this review. We have said that allegations in post-conviction motions are not self-proving, and movant has the burden of proving his asserted grounds for relief by a preponderance of the evidence. Moreover, the failure to make findings of fact on issues not presented at the hearing is not error. *Rumble v. State*, 741 S.W.2d 283, 285 (Mo. App.1987). Under these circumstances we cannot convict the motion court of error when the alleged issue of error was not presented. Points II and III denied.

█ Defendant also claims that the motion court clearly erred by denying his post-conviction relief motion because his trial counsel was ineffective in not timely objecting to the testimony of the detectives regarding their seizure of the Dormin bottle. Trial counsel is presumed to be competent. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A movant must make two showings to prove ineffective assistance of counsel pursuant to *Strickland:* (1) that his trial counsel was ineffective and (2) that he was prejudiced. *Schneider v. State*, 787 S.W.2d 718, 721 (Mo. banc 1990). In establishing his counsel as ineffective, a movant must meet the heavy burden of showing that his trial attorney failed to exercise the customary skill and diligence of a reasonably competent attorney rendering similar services under the existing circumstances and that he was prejudiced by the deficient performance. *Seales v. State*, 580 S.W.2d 733, 735 (Mo. banc 1979).

█ Defendant's underlying direct appeal claim that he did not abandon the Dormin bottle and that the detectives' seizure of the bottle was unreasonable, resulting in a violation of the fourth amendment, is without merit. A review of the facts indicates that the defendant's attorney's efforts at the suppression hearing were diligent but unsuccessful. She may have been negligent in objecting to the testimony about the bottle and the heroin but not ineffective so that the defendant was prejudiced. She did object when the state offered the evidence. The court, as it did in the suppression hearing, overruled her objection. We believe defendant was not prejudiced. Point denied.

█ Defendant in his final point alleges that the motion court clearly erred in denying his post-conviction motion because the defendant was denied effective assistance of counsel because she allegedly failed to investigate and call as a witness William "Bo" Lacy. "Ordinarily, the choice of witnesses and defense tactics are matters of trial strategy and will not support a claim of ineffective assistance of counsel." *Young v. State*, 761 S.W.2d 725, 728 (Mo.App.1988). In order to show ineffectiveness of counsel in this context, a movant has the burden to prove: (1) that the witness could have been located

through reasonable investigation; (2) that the witness if called would have testified; and (3) that the testimony would have provided a viable defense. *Childress–Bey v. State*, 779 S.W.2d 697, 699 (Mo.App.1989).

 The record reflects that although the defendant gave his trial counsel an address where he thought William "Bo" Lacy (hereinafter Lacy) could be found, counsel was unable, after making several attempts, to contact Lacy. Lacy testified at the evidentiary hearing but his description of the events leading up to defendant's arrest were in sharp conflict with defendant's testimony at trial. A review of Lacy's testimony, if given at trial, would not have aided defendant in producing a viable defense. Point denied.

■ Finally, we address the defendant's motion to remand for sentence reduction under § 1.160(2), which this court ordered on November 26, 1990, taken with this case.

It is undisputed that the defendant was sentenced to 17 years imprisonment on June 10, 1988, in the Circuit Court of the City of St. Louis. It is also undisputed that the Missouri Legislature during its 1989 session amended the statute prohibiting the unlawful possession or control of a controlled substance, making such offense a class C felony. § 195.202.2 RSMo Cum. Supp.1990. As a class C felony, the range of punishment authorized for the crime of which the defendant was convicted consists of a term of years not to exceed seven years.

It is further undisputed that the defendant was found to be a persistent offender and therefore subject to an enhanced sentence upon his conviction of a class C felony. The enhanced sentence provision was amended by the Missouri Legislature during its 1990 term and under the amendment, the defendant's enhanced sentence would not be allowed to exceed twenty years. § 558.016.7(3) RSMo Cum.Supp. 1990.

Because the defendant's enhanced sentence still falls within the range of punishment as provided by § 558.016.7(3) RSMo

Cum.Supp.1990, we will not disturb the original sentence of the trial court. Defendant's motion to remand for sentence reduction under § 1.160(2) is hereby denied. *See State v. Pena*, 784 S.W.2d 883, 889 (Mo.App.1990); *Hamil v. State*, 778 S.W.2d 247, 249–250 (Mo.App.1989).

Conviction is affirmed and the denial of defendant's post-conviction relief is affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.