STATE of Missouri, Plaintiff–
Respondent,

v.

Charles F. McKEEHAN, Defendant–
Appellant.

Charles F. McKEEHAN,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 19197, 19557.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 28, 1995.

Rosalynn Koch, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

GARRISON, Presiding Judge.

Appellant was convicted of the class C felony of possession of more than 35 grams of marijuana, § 195.202,[1] and was sentenced,

---

1. All references to statutes are to RSMo Supp. 1990, unless otherwise noted, and all references to rules are to Missouri Rules of Court, V.A.M.R.

as a prior and persistent offender, to ten years' imprisonment. His appeal from that conviction is Case No. 19197. After he was sentenced, Appellant filed a pro se motion seeking to have the conviction and sentence set aside pursuant to Rule 29.15. In Case No. 19557, he appeals the trial court's dismissal of that motion. These appeals have been duly consolidated.

## FACTS

Officer Gary Arias of the Joplin, Missouri Police Department was dispatched to investigate a disturbance at the Red Lion Bar at 12:30 a.m. on April 30, 1993. When the officer arrived he saw Appellant "walking away towards the parking lot," and called to him. Appellant turned around and walked to the officer who said that he then started his "investigation of the disturbance." According to Officer Arias, he intended to interview Appellant to find out what was going on because there did not seem to be a disturbance outside the bar. He noticed, however, that Appellant did not seem to be paying attention to what he was saying but instead was looking around the parking lot. As the officer was in the process of getting Appellant's name, date of birth, and social security number, two backup officers (Officers Hobson and Gilbert) arrived in another police vehicle. Upon their arrival, Appellant "took off running north through the parking lot." He was chased and caught by Officer Arias who took hold of his shoulder and turned him around. They apparently lost their balance and as they were falling to the ground Appellant took a cellophane bag from his pants, containing what appeared to be marijuana, and threw it.

As Officer Arias was handcuffing Appellant, he pointed and told Officer Hobson, "He threw something over there." Officer Hobson then located, five to ten yards away from Appellant, a bag containing what was later identified as more than 40 grams of marijuana. Appellant's motion to suppress the marijuana was overruled and it was admitted in evidence over his objection.

The original information charged Appellant with the class B felony of possession of a controlled substance with intent to distribute in violation of § 195.211. Appellant was convicted under an amended information, filed over his objection, charging him with the class C felony of possession of a controlled substance under § 195.202.

In his direct appeal, Appellant contends that the trial court erred in overruling his motion to suppress the marijuana and in permitting the filing of the amended information.

**Case No. 19197**
*POINT I*

In his first point, Appellant contends that the trial court erred in overruling his motion to suppress and in admitting the marijuana over his objection. He argues that the marijuana was seized in violation of his right to be free from an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution and Art. 1, § 15 of the Missouri Constitution "in that it was seized as the result of an illegal arrest without probable cause since the sole basis of the arrest was appellant's flight from the arresting officer who had no reason to suspect appellant of committing any crime."

We will not reverse the trial court's decision on a motion to suppress unless it is clearly erroneous. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990). Review of a trial court's order denying a motion to suppress is limited to a determination of whether there was sufficient evidence to support that order. *State v. Rodriguez*, 877 S.W.2d 106, 110 (Mo. banc 1994); *State v. Perrone*, 872 S.W.2d 519, 521 (Mo.App.S.D. 1994). The evidence and reasonable inferences therefrom are to be viewed in the light most favorable to the order challenged on appeal. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985); *State v. Bunts*, 867 S.W.2d 277, 278 (Mo.App.S.D.1993). The weight and credibility of the witnesses are matters for the trial court's determination. *State v. Villa–Perez*, 835 S.W.2d 897, 901 (Mo. banc 1992). We may not substitute our discretion for that of the trial court and may not reverse even if we believe we would have weighed the evidence differently. *State v.*

*Stevens,* 845 S.W.2d 124, 128 (Mo.App.E.D. 1993). We do, however, consider the .trial court's ruling in light of the proper application of the Fourth Amendment. *Id.*

Both the Fourth Amendment to the United States Constitution and Art. 1, § 15 of the Missouri Constitution prohibit "unreasonable searches and seizures." It is apparent that there was no search of Appellant's person which resulted in seizure of the marijuana. Rather, Appellant contends that his act of throwing the bag of marijuana was the result of an unlawful seizure of his person. In support, Appellant cites *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d. 690 (1991).

In *Hodari* several youths who had been huddled around a parked car ran as officers approached. The officers gave chase and just before they tackled him, defendant tossed away a substance later identified as crack cocaine. The issue as framed by the Supreme Court was "whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." *Id.* at 623, 111 S.Ct. at 1549. If not, the court said "the drugs were abandoned by Hodari and lawfully recovered by the police, and the evidence should have been admitted." *Id.* Noting that the Fourth Amendment protects against unreasonable seizures of the person as well as property, the United States Supreme Court held that a seizure occurs when either physical force is applied to restrain a suspect or the suspect submits to an officer's show of authority. *Id.* at 626–27, 111 S.Ct. at 1551. In that case the court concluded that Hodari had not yet been physically restrained and since he had not submitted to the instructions to halt, he had not been seized until he was tackled. *Id.* at 629, 111 S.Ct. at 1552. It said, "[t]he cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." *Id.*

Courts have excluded evidence abandoned by a defendant on the theory that the seizure was unlawful and the subsequent or contemporaneous dropping or throwing of the evidence was a consequence thereof resulting in exclusion. *See State v. Tucker,* 136 N.J. 158, 642 A.2d 401, 409 (1994); *Motley v. Commonwealth,* 17 Va.App. 439, 437 S.E.2d 232, 235 (1993); *U.S. v. Wilson,* 953 F.2d 116, 127 (4th Cir.1991). *See also 4 Wayne R. LaFave, Search and Seizure,* § 11.4(j) at 459–60 (2d Ed.1987).

The issue in the instant case, therefore, is whether Appellant's act in throwing the bag of marijuana was the product of an unlawful seizure of his person and therefore offensive under a Fourth Amendment analysis, or constituted an abandonment, thereby depriving him of a constitutional objection to its admission.

Officer Arias described his chase and apprehension of Appellant by saying:

Q. And what happened after Mr. McKeehan took off running?

A. I took, chased after him and caught him about 30 yards away.

Q. What happened after you caught Mr. McKeehan?

A. Well, I caught up to Mr. McKeehan, I reached out and put my left hand top of his shoulder to turn him around. When he turned around, we got, kind of like lost our balance, and he, he grabbed ahold of my shirt. My pocket of my shirt ripped, and we both went to the ground. At that time when we were both going to the ground, I seen him reach in the front of his pants and pull out a bag.

. . . .

Q. Could you tell what was inside the bag?

A. It appeared to be marijuana at the time.

. . . .

Q. After he pulled this zip-lock bag, or this bag, out of his pants, what did he do with it?

A. Then he threw it.

■ Appellant does not contend that a seizure occurred prior to his running and being caught by the officer.[2] It is apparent

---

**2.** A consensual encounter by which an officer asks a person a few questions does not constitute a seizure so long as a reasonable person would feel free to disregard the police and go about his

from *Hodari* that the pursuit of Appellant, itself, did not constitute a seizure. *See also State v. Johnson*, 863 S.W.2d 361, 362–363 (Mo.App.E.D.1993); *State v. Nicholson*, 839 S.W.2d 593, 596 (Mo.App.W.D.1992); *State v. Shahid*, 813 S.W.2d 38, 40 (Mo.App.E.D. 1991); *State v. Qualls*, 810 S.W.2d 649, 653 (Mo.App.E.D.1991).

■ The Appellant was seized, however, when Officer Arias caught him and took hold of his shoulder in the process of turning him around to restrain him. *California v. Hodari D.*, 499 U.S. at 624–628, 111 S.Ct. at 1550–1552. *See also Sibron v. State of New York*, 392 U.S. 40, 69, 88 S.Ct. 1889, 1905, 20 L.Ed.2d 917 (1968). Appellant argues that Officer Arias did not have probable cause to arrest him with the result that the abandonment or throwing of the marijuana was the product or consequence of that unlawful event.

Appellant characterizes his seizure as an arrest based solely on his having fled from the officers and therefore as being without probable cause. In support, he cites *United States v. Green*, 670 F.2d 1148, 1152 (D.C.Cir.1981); *State v. Johnson*, 670 S.W.2d 882, 885 (Mo.App.E.D.1984); and *United States v. Vasquez*, 534 F.2d 1142, 1145 (5th Cir.1976). Those cases, together with *State v. Trimble*, 654 S.W.2d 245, 258 (Mo.App.S.D. 1983), all stand for the proposition that flight alone will not provide probable cause for an arrest, but may be a consideration, and in some cases may provide the key ingredient, justifying a decision to take action.

■ Appellant does not cite or refer to *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Under *Terry* a police officer may temporarily stop an individual for investigatory purposes if the officer has a reasonable and articulable suspicion that the person is engaged in criminal activity. Probable cause to make an arrest is not required for a *Terry* stop. *State v. Fernandez*, 691 S.W.2d 267, 269 (Mo. banc 1985). Once the police have reasonable suspicion needed to justify an investigatory stop, they may use forcible means reasonably necessary

to effectuate that stop without converting it into.an arrest. *United States v. Weaver*, 8 F.3d 1240, 1244 (7th Cir.1993).

In the instant case, Officer Arias was dispatched to the scene because of a reported "disturbance." Upon arrival, he saw Appellant in the parking lot and started his investigation by interviewing him. During that interview, Appellant seemed distracted or, as Officer Arias described it, he was "not really involved with talking to me" and was "looking around the parking lot." As soon as the two backup officers arrived, Appellant turned and ran before being chased and caught.

In *State v. Simmons*, 734 S.W.2d 513 (Mo. App.E.D.1987), a man in a parking lot holding some belts started to run when he saw an officer who was on regular patrol and who did not then know that belts had been taken from a nearby department store. The officer gave chase and apprehended the defendant. The court said:

> We discern no violation of defendant's Fourth Amendment rights in connection with his initial detention by Officer Nunnally. It is well established that a police officer is not required to have probable cause for arrest in order to make an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Adell*, 716 S.W.2d 469, 471 (Mo.App. 1986). In the instant case, the police officer observed the defendant at approximately 9:25 p.m. standing on a restaurant parking lot holding eleven belts partially wrapped in a jacket. When the defendant saw the police car, he attempted to flee. Such facts allow for an investigatory stop. As was said in *State v. Sims*, 639 S.W.2d 105, 107 (Mo.App.1982), "Investigative detention is lawful if, in the totality of the circumstances, a particularized suspicion results that the person stopped is engaged in wrongdoing. The retrospective evaluation takes into consideration the inferences which would be drawn by a trained police officer and the evidence is to be viewed as seen by one versed in law enforcement."

*Id.* at 514.

*State v. Sims*, 639 S.W.2d 105 (Mo.App. W.D.1982), involved an officer who noticed a

business. *Florida v. Bostick*, 501 U.S. 429, 433–435, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 396

(1991). *See also Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

car parked, late at night, in front of a house known to be a location where drugs were used. When the officer approached the car to investigate, it drove off at a high speed resulting in a chase and ultimate apprehension. The court held that even if the presence of the defendant in the car outside the residence was not enough to permit an investigatory stop, "the immediate departure of the vehicle when the officer approached and the attempt to elude pursuit amply justified belief by the officer that criminal activity was afoot," authorizing an investigatory stop. *Id.* at 107.

In *State v. Adell,* 716 S.W.2d 469 (Mo.App. E.D.1986), an officer was dispatched to the scene on a report of shots being fired and several persons chasing someone. Upon arrival the officer saw two people a block from the scene who slowed their pace, "kept looking back at the vehicle, and appeared nervous." The court said, "[g]iven the hour of the night, almost 3:30 a.m., the proximity of the pair to the reported incident, and the way they acted after seeing the marked patrol car, Officer Lane was justified in her initial stop of defendant and his companion." *Id.* at 471.

There is no "bright line" test to determine the reasonableness of a *Terry* stop. *See State v. Childress,* 828 S.W.2d 935, 945 (Mo.App.S.D.1992). In comparing the facts in the instant case with the above authorities, we are unable to conclude that the apprehension ("seizure") of Appellant violated his Fourth Amendment rights. The factors present in the instant case, when considered together, would lead to a reasonable suspicion of some criminal activity justifying an investigatory stop.

We do not ignore the fact that Officer Arias said that, when Appellant began to run, he considered him under arrest for a city ordinance violation of "obstruction" and that he proceeded to handcuff him when apprehended.[3] Based on his description of the events and his intended action, it could be argued that he intended an arrest as opposed to a *Terry* stop. A valid investigative detention is not invalidated, however, by the officer's announcement that the suspect is under arrest. *State v. Sims,* 639 S.W.2d at 107, n. 1.

So long as officers do no more than they are objectively authorized and legally permitted to do, an officer's motives are irrelevant. *State v. Mease,* 842 S.W.2d 98, 105–106 (Mo. banc 1992). In *United States v. Hensley,* 469 U.S. 221, 234–35, 105 S.Ct. 675, 683–84, 83 L.Ed.2d 604 (1985), the United States Supreme Court upheld a stop based on an objective reasonable suspicion even though the officer intended to make an arrest under circumstances where an arrest would not be justified.

In the instant case, the existing facts and circumstances authorized at least an investigative stop and detention of Appellant when he ran. Because this "seizure" was authorized, his disposal of the bag of marijuana constituted an abandonment and was not the consequence of police conduct which was violative of Fourth Amendment principles. The trial court, therefore, did not err in overruling the motion to suppress. The first point is denied.

*POINT II*

In his second point, Appellant contends that the trial court erred in permitting the State to file an amended information. The original information charged Appellant with committing the class B felony of possession of a controlled substance with intent to distribute in violation of § 195.211 in which it alleged that he possessed "more than 35 grams of marijuana." Thereafter, the State was permitted to file an amended information charging the class C felony of possession of a controlled substance in violation of § 195.202 in which it was also alleged that Appellant possessed "more than 35 grams."

Appellant opposed the amendment on the theory that it violated Rule 23.08 because the amended information charged an offense dif-

---

3. The city ordinance in question was not introduced in evidence. Although we do not have it available for review, see *Florida v. Royer,* 460 U.S. at 497–498, 103 S.Ct. at 1324, 75 L.Ed.2d 229 (1983), which holds that a citizen may refuse to answer an officer's questions and may go on his way unless recognizable, objective grounds exist to detain him.

ferent from the one charged in the original information. He argued that the new charge should be filed, if at all, in the associate division subject to his right to have a preliminary hearing. The State acknowledged both to the trial court and in its brief that the inclusion of "more than 35 grams" in the original information was a typographical error. The trial court noted the same thing and stated that "he was bound over on a complaint that says he possessed more than five grams of marijuana with the intent to distribute." [4]

Rule 23.08 provides, in part:

Any information may be amended . . . at any time before verdict . . . if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced.

See also § 545.300, RSMo 1986.

█ The rule has been consistently interpreted as prohibiting an amendment to an information if the effect is to charge an offense different from the one originally charged. *State v. Pikey*, 857 S.W.2d 519 (Mo.App.E.D.1993). In determining whether the amended information charges a new or different offense, courts inquire to determine whether the elements of the two offenses are different. *See State v. Larner*, 844 S.W.2d 490, 492 (Mo.App.E.D.1992); *State v. Greathouse*, 789 S.W.2d 50, 52 (Mo.App.W.D.1990). An amendment is not prohibited, however, if the subsequent charge is a lesser included offense of the initial charge. *Id.; State v. Wilkerson*, 796 S.W.2d 388, 391 (Mo.App.S.D. 1990); *McKown v. State*, 682 S.W.2d 38, 40 (Mo.App.W.D.1984).

█ Possession of more than 35 grams of marijuana in violation of § 195.202 is a different offense and is not a lesser offense included in the offense of possession of more than five grams with intent to distribute under § 195.211. *See State v. Burns*, 877 S.W.2d 111, 112 (Mo. banc 1994); *State v. Polk*, 864 S.W.2d 1, 3 (Mo.App.W.D.1993). The reason

is the difference in the quantities required for conviction. *Id.*

The State, while admitting that there has been a "technical violation of Rule 23.08," points to the fact that the original information, although perhaps by mistake, alleged possession of more than 35 grams of marijuana with intent to distribute and that the amended information also alleged possession of the same amount. It argues that the original information should be construed as charging both offenses in the alternative and argues that in any event Appellant was not prejudiced and never suffered a lack of notice about the amount of marijuana involved. As Rule 23.08 is worded, however, the issue of prejudice does not arise if the amendment charges a different offense. *See State v. Greathouse*, 789 S.W.2d at 52–53.

█ It is true that the original information charged Appellant with violating § 195.211 by possessing (with intent to distribute) more than 35 grams of marijuana and that the amended information charged a violation of § 195.202 by possession of the same amount. As noted however, possession of more than 35 grams is an element under § 195.202 whereas § 195.211 authorizes a conviction upon proof of possession of more than five grams. Proof of allegations in a criminal charge which are greater than the elements of the offense are not required for a conviction. *See State v. Rouse*, 866 S.W.2d 179, 180 (Mo.App.W.D.1993); *U.S. v. Smith*, 838 F.2d 436, 439 (10th Cir.1988). See also *State v. Church*, 636 S.W.2d 703, 704 (Mo. App.S.D.1982), holding that by charging defendant with attempting to obtain a controlled substance by fraud or deception, the state was not required to prove both methods alleged in the indictment, saying "[n]o fatal variance arises from a failure to prove all of the several ways in which the offense is charged."

Section 544.250, RSMo 1986, provides, in pertinent part:

---

4. The record before us does not contain a copy of the complaint on which Defendant received a preliminary hearing. The trial court's statement about its contents was not contested by either party and would substantiate the premise that

the original information contained a typographical error in charging possession of more than 35 grams of marijuana with intent to distribute rather than more than five grams as proscribed by § 195.211.2.

No prosecuting or circuit attorney in this state shall file any information charging any person ... with any felony, until such person ... shall first have been accorded the right of a preliminary examination before some associate circuit judge ...; provided, a preliminary examination shall in no case be required where same is waived by the person charged with the crime....

It is apparent, therefore, that Rule 23.08 and § 545.300, RSMo 1986, presuppose that the original information filed will constitute the charge upon which a preliminary hearing has been accorded the defendant. In the instant case, the complaint on which Appellant was accorded a preliminary hearing, however, charged a violation of § 195.211 by possessing more than five grams of marijuana with intent to distribute. Appellant objected to the amendment in question and noted, among other things, that he was entitled to a preliminary hearing on the new charge. In this regard, it is significant that proof that he possessed 35 grams of marijuana was an element of the offense charged in the amended information. *See State v. Burns*, 877 S.W.2d at 112. The corresponding element under § 195.202 for which Appellant received a preliminary hearing was only "more than 5 grams" and would have authorized a conviction upon proof of possession of more than five but less than 35 grams of marijuana.

■ In considering whether an amended information charges a new or different offense, courts have considered the charge upon which a preliminary hearing was granted. In *State v. Simpson*, 846 S.W.2d 724 (Mo. banc 1993), the court found that the amended information did in fact charge a different offense in violation of Rule 23.08 but the defendant was not entitled to relief on a plain error review because he did not object to the absence of a preliminary hearing on the amended charge. In the instant case, Appellant objected on the basis that not only did the amendment violate Rule 23.08, but also that he was entitled to a preliminary hearing on the charge which required proof of possession of more than 35 grams.

We are compelled to conclude that the amended information violated Rule 23.08 requiring a reversal of the conviction and remand.

### Case No. 19557

In Case No. 19557, Appellant alleges that the motion court erred in dismissing his Rule 29.15 motion by which he sought to have his conviction and sentence set aside because of the alleged ineffectiveness of his trial counsel. Because we have found it necessary to reverse Appellant's conviction and remand the case based on his direct appeal, Case No. 19557 is now moot and it is dismissed.

The judgment in Case No. 19197 is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

CROW and PREWITT, JJ., concur.